STATE OF NORTH CAROLINA v. CHARLES E. JOHNSON, ALIAS CHARLES
E. JONES, AND HERMAN NATHANIEL McCOY

No. 18

(Filed 14° May 1969)

**1. Constitutional Law § 30— right to speedy trial — undue delay in return of indictment**

Defendant was denied his constitutional right to a speedy trial, entitling him to a dismissal of the prosecution, where there was a four year delay between the issuance of the arrest warrant charging defendant with a felony and the return of the indictment, and where the record shows that (1) the delay was the purposeful and deliberate choice of the solicitor, even though the defendant was in prison on another charge and was available for trial at all times and even though the State's witness was also continuously available for trial, and (2) the four year delay created the reasonable possibility that prejudice resulted to defendant in that had the indictment and the trial promptly followed the issuance of the warrant, the trial judge at an earlier trial might have allowed the sentence for this prosecution to run concurrently with sentences in other offenses.

**2. Constitutional Law § 30— right to speedy trial**

The fundamental law of the State secures to every person formally accused of crime the right to a speedy and impartial trial, as does the Sixth Amendment to the Federal Constitution (made applicable to the State by the Fourteenth Amendment).

**3. Constitutional Law § 30— speedy trial — applicable to convicts**

A convict, confined in the penitentiary for an unrelated crime, is not excepted from the constitutional guarantee of a speedy trial of any other charges pending against him.

**4. Constitutional Law § 30— speedy trial — factors considered**

The four interrelated factors to be considered in determining whether defendant has been denied his constitutional right to a speedy trial are: the length of the delay, the cause of the delay, waiver by the defendant, and prejudice to the defendant.

**5. Constitutional Law § 30— speedy trial — purpose**

The guarantee of a speedy trial is designed to protect a defendant from the dangers inherent in a prosecution which has been negligently or arbitrarily delayed by the State, prolonged imprisonment, anxiety and public distrust engendered by untried accusations of crime, lost evidence and witnesses, and impaired memories.

**6. Constitutional Law § 30— speedy trial — burden of proof**

The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or wilfulness of the prosecution.

**7. Constitutional Law § 30— speedy trial — delay by defendant**

A defendant who has himself caused the delay of his trial, or acquiesced

in it, will not be allowed to convert the guarantee of a speedy trial, designed for his protection, into a vehicle in which to escape justice.

**8. Constitutional Law § 30— speedy trial — delay in serving warrant**

After a complaint has been filed, an inordinate delay in serving the warrant or in securing an indictment will violate the right to a speedy trial.

**9. Criminal Law § 8— limitation of actions — felony**

In this State no statute of limitations bars the prosecution of a felony.

**10. Constitutional Law § 30— speedy trial — effect of statute releasing defendant from custody**

G.S. 15-10, which merely provides that under certain circumstances a defendant who has not been speedily tried shall be released from custody, does not require that the prosecution against defendant be dismissed.

**11. Constitutional Law § 30— speedy trial — effect of legislation**

The constitutional guarantee of a speedy trial imposes the only limitation upon purposeful and oppressive delays between the date of a felonious offense and the commencement of the prosecution, and this guarantee cannot be impinged by legislative limitation.

**12. Constitutional Law § 30— speedy trial — status of the accused**

There is little, if any, difference in the dilemma which unreasonable delay in trial creates for the suspect who was belatedly charged, the accused named in a warrant promptly issued but belatedly served, and the indicted defendant whose trial has been unduly postponed.

**13. Constitutional Law § 30— demand for speedy trial — waiver of right**

A defendant who has been indicted is in a position to demand a speedy trial, and if he does not do so he will waive his right to the constitutional guarantee.

**14. Constitutional Law § 30— speedy trial — no duty of defendant to demand indictment**

Defendant who had been charged with the felony of armed robbery in an arrest warrant was under no duty to demand that an indictment be brought against him in order to secure his constitutional right to a speedy trial.

**15. Constitutional Law § 30; Criminal Law § 91— speedy trial — possibility of delay**

The possibility of unavoidable delay is inherent in every criminal action.

**16. Constitutional Law § 30— speedy trial — good-faith delays — oppressive delays**

The constitutional guarantee to a speedy trial does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case; the proscription is against purposeful or oppressive

delays and those which the prosecution could have avoided by reasonable effort.

**17. Constitutional Law § 30;   Solicitors—   duty of prosecuting officers — initiation of prosecution      :**

It is the duty of prosecuting officers to file formal charges when their case against a suspect is complete and the testimony to convict him is at hand, and to serve the warrant within a reasonable time thereafter.

**18. Constitutional Law § 30;   Solicitors—   duty of prosecuting officers — arraignment and trial**

After initiating a prosecution the State has the duty to arraign the defendant and see that he is speedily brought to trial.

**19. Criminal Law § 138—   eligibility for parole**

Defendant who has served one-fourth of his sentence is eligible for parole. G.S. 148-58.

**20. Constitutional Law § 30—   denial of right to speedy trial — dismissal of prosecution**

When there has been an atypical delay in issuing a warrant or in securing an indictment and the defendant shows (1) that the prosecution deliberately and unnecessarily caused the delay for the convenience or supposed advantage of the State and (2) that the length of the delay created a reasonable possibility of prejudice, defendant has been denied his right to a speedy trial and the prosecution must be dismissed.

**21. Constitutional Law § 30—   speedy trial — four-year delay in securing indictment**

A delay of four years in securing an indictment is, nothing else appearing, an unusual and an undue delay.

APPEAL, under G.S. 7A-30, by defendant Johnson from the decision of the Court of Appeals (3 N.C. App. 420, 165 S.E. 2d 27), which found no error in his trial before *Parker, J.,* 25 March 1968 Session of NASH.

Appellant was tried upon a bill of indictment returned at the November 1967 Session of Nash. It charges that on 25 October 1963, in the place of business of Bruce Murray, Johnson threatened the life of William Hatch with a pistol and feloniously took from him and carried away $115.00 belonging to Murray. At the same time an indictment charging Herman Nathaniel McCoy with the identical offense was returned. The two bills were consolidated for trial.

Before the jury was impaneled, each defendant moved that the prosecution be dismissed because his right to a speedy trial, "as guaranteed by the Sixth and Fourteenth Amendments to the Constitution of the United States," had been violated. The court, after

finding facts, which will be summarized in the opinion, overruled the motion.

The evidence for the State tended to show: About 1:00 a.m. on 25 October 1963, while William Hatch, an employee of Bruce Murray, was on duty alone at Murray's Esso Service Station in Sharpsburg, Johnson and McCoy, after threatening him with a pistol, took approximately $115.00 from the cash register and fled. Two days later, in the Wilson County jail, Hatch identified McCoy as the man who held the gun on him and Johnson as the one who removed the money. On 1 November 1963, G. O. Womble, Sheriff of Nash County, obtained warrants charging the two men with armed robbery. On that day, in the office of the Chief of Police of Wilson, both Johnson and McCoy, after each had been fully warned of his constitutional rights (as these rights were understood prior to the decision in *Miranda v. Arizona*, 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602), made full confessions. These corroborated Hatch's version of the episode in every detail. Each also implicated one James Stewart, who (they said) had driven the automobile used in the robbery. After the three divided the money the next day, Stewart left; the other two had not seen him since.

Defendants offered no evidence; each was convicted of the crime charged. Upon each, the judge imposed a sentence of not less than ten nor more than fifteen years, to begin at the expiration of the twenty-year sentence imposed upon him at the 6 December 1963 Session of Wilson upon another charge of armed robbery. Both appealed to the Court of Appeals, which found no error in the trial. Only Johnson appealed to this Court.

*Attorney General T. W. Bruton by Deputy Attorney General Ralph Moody for the State.*

*Cleveland P. Cherry for Charles E. Johnson, alias Charles E. Jones, defendant appellant.*

SHARP, J.

[1]  Defendant's first assignment of error is that the trial judge erred in overruling his motion to dismiss this prosecution because he had been denied his constitutional right to a speedy trial. The facts upon which defendant bases this motion are not in dispute:

On 1 November 1963, the seventh day after the robbery, Sheriff Womble obtained warrants charging Johnson and McCoy with the crime. At that time Johnson and McCoy were in jail in Wilson

County, charged with having committed during the week of the Nash County robbery four other armed robberies, one in Edgecombe County and three in Wilson County. In addition, appellant Johnson was charged in Edgecombe with the crime of felonious assault. On the same day the sheriff obtained the warrants, he read them to Johnson and McCoy in the Wilson County jail. The warrants were not formally served on them because, Womble said, he lacked authority to act in Wilson County. However, at that time (Judge Parker found) defendants "understood thoroughly the contents" of the warrants. At this point, the sheriff did nothing further to advance the trial of this action.

At the 11 November 1963 Session of Edgecombe, Johnson entered pleas of guilty in the two cases pending against him there. They were consolidated for judgment and one sentence of fifteen years in the State's prison was imposed by the Honorable George M. Fountain, Judge Presiding in the Seventh Judicial District (Wilson, Edgecombe, and Nash counties). At the December 1963 Session of Wilson, Johnson also entered pleas of guilty to the three indictments pending there, and Judge Fountain imposed concurrent sentences of twenty, ten, and twenty years in the State's prison. These sentences ran concurrently with the Edgecombe County sentence.

Four years later, at the November 1967 Session of Nash, the grand jury returned the bill of indictment charging Johnson and McCoy with the Nash County robbery. Sheriff Womble said he could have secured the indictment in December 1963 but did not do so because he had been attempting, without success, to locate "a third party," who was involved in the case. By November 1967, however, he was convinced he would never find that party. On 29 September 1967 he had filed a detainer against defendant with the Department of Correction.

At no time did either defendant ever request or demand a trial of the charge contained in the unserved warrant.

At the January 1968 Session counsel was appointed for both defendants and the case continued until March at their request. At the hearing upon defendant's motion to dismiss, Johnson's attorney testified that the case was then so old he could find nobody who remembered anything about it; that defendant did not give him the names of any witnesses and said that he could not remember where he was on 25 October 1963.

Mr. Roy R. Holdford, Jr., since 1 January 1963, the solicitor of the Second Solicitorial District (which included, *inter alia,* Wilson,

Edgecombe and Nash counties) testified that in 1963 he disposed of 1,700 cases. He had no recollection of Johnson and McCoy prior to 29 January 1968, although he had probably talked to Sheriff Womble when the defendants were tried in Wilson County.

In support of their motion, defendants introduced certified copies of the bills of indictment returned in Edgecombe and Wilson counties, the four commitments from Wilson County, and a letter to Johnson's attorney from the Department of Correction. This letter, dated 13 February 1968, stated that the Clerk of the Superior Court of Nash County had filed the detainer against defendant on 24 January 1968, and that Johnson's release was then tentatively scheduled 26 December 1977. Neither defendant testified.

[2-7]    Decisions of this Court establish:

1.    The fundamental law of the State secures to every person *formally accused* of crime the right to a speedy and impartial trial, as does the Sixth Amendment to the Federal Constitution (made applicable to the State by the Fourteenth Amendment, *Klopfer v. North Carolina*, 386 U.S. 213, 18 L. Ed. 2d 1, 87 S. Ct. 988 (1967)).

2.    A convict, confined in the penitentiary for an unrelated crime, is not excepted from the constitutional guarantee of a speedy trial of any other charges pending against him.

3.    Undue delay cannot be categorically defined in terms of days, months, or even years; the circumstances of each particular case determine whether a speedy trial has been afforded. Four interrelated factors bear upon the question: the length of the delay, the cause of the delay, waiver by the defendant, and prejudice to the defendant.

4.    The guarantee of a speedy trial is designed to protect a defendant from the dangers inherent in a prosecution which has been negligently or arbitrarily delayed by the State; prolonged imprisonment, anxiety and public distrust engendered by untried accusations of crime, lost evidence and witnesses, and impaired memories.

5.    The burden is on an accused who asserts the denial of his right to a speedy trial to show that the delay was due to the neglect or willfulness of the prosecution. A defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee, designed for his protection, into a vehicle in which to escape justice. *State v. Hollars*, 266 N.C. 45, 145 S.E. 2d 309; *State v. Lowry*, 263 N.C. 536, 139 S.E. 2d 870, *appeal dismissed*, 382 U.S. 22, 15 L. Ed. 2d 16, 86 S. Ct. 227 (1965); *State v. Patton*, 260 N.C.

359, 132 S.E. 2d 891, *cert. denied,* 376 U.S. 956, 11 L. Ed. 2d 974, 84 S. Ct. 977 (1964); *State v. Webb,* 155 N.C. 426, 70 S.E. 1064.

The North Carolina cases which establish the foregoing principles dealt with delays between the return of the indictment and the trial. This case involves a pre-indictment delay and the question when the right to a speedy trial first attaches. It requires us to decide whether the interval between the time the State acquired evidence sufficient to justify defendant's prosecution (at which time a warrant for his arrest was secured) and the time it procured the indictment, constituted a delay violating his right to a speedy trial.

It has generally been held that federal and state constitutional guarantees of a speedy trial were inapplicable to delays in commencing a prosecution; that prior to the time a defendant was actually charged he was not an "accused" and the right to a speedy trial arose only after a formal complaint had been lodged. *State v. LeVien,* 44 N.J. 323, 209 A. 2d 97 (1965); 21 Am. Jur. 2d *Criminal Law* § 248 (1965); *see State v. Hodge,* 153 Conn. 564, 219 A. 2d 367 (1966); *People v. Hayciuk,* 36 Ill. 2d 500, 224 N.E. 2d 250 (1961); Note: *The Lagging Right to a Speedy Trial,* 51 Va. L. Rev. 1587, 1588, 1613 (1965); Note: *Justice Overdue,* 5 Stan. L. Rev. 95, 99-100 (1952). The federal courts have held that an accused's right to have a prosecution dismissed because of a delay between the date of the offense and commencement of criminal prosecution is controlled by the applicable statute of limitations and not by the Sixth Amendment. *United States v. Panczko,* 367 F. 2d 737 (7th Cir. 1966); *Bruce v. United States,* 351 F. 2d 318 (5th Cir. 1965); *Nickens v. United States,* 323 F. 2d 808 (D. C. Cir. 1963) and cases cited therein; 22A C.J.S., *Criminal Law* § 474 (1961). However, in *Ross v. United States,* 349 F. 2d 210 (D. C. Cir. 1965), a delay of seven months between offense (narcotic violation) and formal complaint was held to have deprived the defendant of due process. In *Ross,* the record disclosed (1) a *purposeful* delay of seven months between offense and arrest, (2) the defendant's plausible claim of inability to recall or reconstruct the events of the day of the offense, and (3) a trial in which the government's case consisted of the recollection of one witness refreshed by a notebook. *Id.* at 215. In *Taylor v. United States,* 238 F. 2d 259 (D. C. Cir. 1956), the court added "the long delay in the return of the indictment (3 years, 7 months)" to the government's two-year delay thereafter in trying the defendant and held that, considering all the factors involved, the defendant had been denied a speedy trial. *Accord, Petition of Provoo,* 17 F. R. D. 183 (D. Md. 1955), *affirmed,* 350 U.S. 857, 100 L. Ed. 761, 76 S. Ct. 101 (1955).

[8]　　After a complaint has been filed an inordinate delay in serving the warrant or in securing an indictment will violate the right to a speedy trial. 21 Am. Jur. 2d *Criminal Law* § 248 (1965); Annot., Delay between filing of complaint or other charge and arrest of accused as violation of right of speedy trial, 85 A.L.R. 2d 980 (1962); *Ex parte Trull*, 133 Kan. 165, 298 P. 775 (1931); *Jones v. State*, 250 Miss. 186, 164 So. 2d 799 (1964); 21 Am. Jur. 2d *Criminal Law* § 248 (1965). *See* Note: *The Right to a Speedy Trial*, 20 Stan. L. Rev. 476, 482-85 (1968).

The situation of one against whom a warrant has been issued but not served and that of "the potential defendant" — the suspect who has not been formally charged — is practically the same. The question whether the latter is within the speedy-trial guaranty is, as pointed out by the Illinois court in *People v. Hryciuk, supra,* of comparatively recent origin. 20 Stan. L. Rev. 476, 485-493 (1968); *see* 5 Stan. L. Rev. 95 (1952). In *Hryciuk,* the defendant was arrested on 14 March 1939 for a rape, to which he then confessed. Two days later he confessed to a 1937 murder. He was not indicted for the murder but was tried and convicted for rape. In March 1953, in a post-conviction proceeding he was granted a new trial on the rape conviction. The following day he was indicted for the 1937 murder. In June 1955, he was convicted on the murder charge. On appeal, his sole contention was that he had been denied his constitutional right to a speedy trial. The question, said the Illinois Supreme Court, was "whether the 14 year delay between the time when the State had all the available evidence in its possession and the time when it chose to seek an indictment was so long and oppressive that the defendant was deprived of his right to a speedy trial." *Id.* at 501, 224 N.E. 2d at 251. In answering the question YES, the court declined to find that the prosecution had acted in bad faith. It was enough that "the delay was a deliberate and calculated one. From a delay of fourteen ·years, a presumption of prejudice arises. . . ." *Id.* at 504, 224 N.E. 2d at 252. *Accord, Barker v. Municipal Court*, 51 Cal. Rptr. 921, 415 P. 2d 809 (1966); *Rost v. Municipal Court*, 184 Cal. App. 2d 507, 7 Cal. Rptr. 869, 85 A.L.R. 2d 974 (1960); *Petition of Provoo, supra.*

[9-11]　　In this State no statute of limitations bars the prosecution of a felony. *State v. Burnett*, 184 N.C. 783, 115 S.E. 57. (*See* G.S. 15-1 for the limitation upon misdemeanors.) G.S. 15-10 merely provides that under certain circumstances a defendant who has not been speedily tried shall be released from custody. It does not require that the prosecution against him be dismissed. *State v. Patton,*

*supra.* The constitutional guarantee of a speedy trial, therefore, imposes the only limitation upon purposeful and oppressive delays between the date of a felonious offense and the commencement of the prosecution. Of course, no legislative limitation could impinge upon the constitutional guaranty, *Rost v. Municipal Court, supra.*

**[12]** We can see little, if any, difference in the dilemma which unreasonable delay creates for the suspect who was belatedly charged, the accused named in a warrant promptly issued but belatedly served, and the indicted defendant whose trial has been unduly postponed. The same considerations which impel prompt action in the one situation are equally critical in the others. "Indeed, a suspect may be at a special disadvantage when complaint or indictment, or arrest, is purposefully delayed. With no knowledge that criminal charges are to be brought against him, an innocent man has no reason to fix in his memory the happenings on the day of the alleged crime. Memory grows dim with the passage of time. Witnesses disappear. . . ." *Nickens v. United States, supra* at 813 (concurring opinion). *See Taylor v. United States, supra* at 261.

**[13, 14]** A defendant who has been indicted is in a position to demand a speedy trial. Indeed, if he does not do so he will waive his right to the constitutional guarantee. *State v. Hollars, supra;* Annot., 129 A.L.R. 572 (1940); Annot., 57 A.L.R. 2d 302 (1958). However, one who has not been arrested or indicted has no duty to take the initiative in his own prosecution, *United States v. Kojima,* 3 Hawaii Fed. 381 (1909). Prior to indictment he cannot demand a speedy trial.

**[14]** Defendant Johnson, charged with a felony in a warrant issued 1 November 1963, could not have been tried until he was indicted in November 1967 — four years later. Therefore, the judge's finding that "at no time since November 1, 1963" had defendant requested or demanded that he be allowed his constitutional right to a speedy trial is irrelevant to the inquiry. As the Supreme Court of New Jersey said in *State v. LeVien, supra* at 326-27, 209 A. 2d at 99, "[W]e find no authority which would permit one who commits a crime to insist on the State's instituting criminal proceedings. It is the prosecutor who in the first instance has the discretion in such circumstances."

In *Day v. State,* 50 Okla. Cr. 180, 296 P. 987 (1931), the defendant had moved to dismiss the prosecution against him because the indictment was not returned until approximately one year and one month after the homicide. The State made no attempt to show good

cause for the delay. The trial court denied the motion; the Court of Criminal Appeals reversed, saying:

". . . It can hardly be argued that one charged with crime and held at a preliminary examination for action of the district court is required to demand that an information be filed against him in order to secure his constitutional right to a speedy trial. There is a difference between a demand for a trial by an accused on bail after he has been formally charged in a court where a final trial can be had and a case such as the instant case, in which no information has been filed upon which a final trial can be had." *Id.* at 181-82, 296 P. at 988.

**[15-18]** The possibility of unavoidable delay is inherent in every criminal action. The constitutional guarantee does not outlaw good-faith delays which are reasonably necessary for the State to prepare and present its case. *Butts v. Commonwealth,* 145 Va. 800, 133 S.E. 764 (1926). Speedy trial "does not preclude the rights of public justice." *Beavers v. Haubert,* 198 U.S. 77, 87, 49 L. Ed. 950, 954, 25 S. Ct. 573, 576 (1905). Neither a defendant nor the State can be protected from prejudice which is an incident of ordinary or reasonably necessary delay. The proscription is against purposeful or oppressive delays and those which the prosecution could have avoided by reasonable effort. *Pollard v. United States,* 352 U.S. 354, 1 L. Ed. 2d 393, 77 S. Ct. 481 (1957). Obviously, the authorities should not bring formal charges against a suspect until they have probable cause to believe they can prove him guilty; and — in a proper case — a reasonable delay may be justified to protect and to promote further responsible police investigation. *State v. Hodge, supra.* Ordinarily, however, it is the duty of prosecuting officers to file formal charges when their case against a suspect is complete and the testimony to convict him is at hand; and to serve the warrant within a reasonable time thereafter. After initiating a prosecution the State has the duty to arraign the defendant and see that he is speedily brought to trial. *People v. Prosser,* 309 N.Y. 353, 130 N.E. 2d 891, 57 A.L.R. 2d 295 (1955); *State v. Milner,* 149 N.E. 2d 189 (Ohio Comm. Pl. Montgomery Cty. 1958); *Barker v. Municipal Court, supra; Rost v. Municipal Court, supra; Jones v. State, supra.*

**[1]** The facts in this case negate any valid reason for the State's four-year delay in procuring the indictment. The transcript affirmatively discloses that the delay was the studied choice of the prosecution. On 1 November 1963, Hatch (a continuously available witness), had positively identified defendant and McCoy as the two men who had committed the robbery. The two men had made a full

confession to Sheriff Womble and his deputy. In the confessions they had implicated Stewart in their crime. Indictments could have been secured at the November 1963 Session of Nash — or at any subsequent term — had the prosecuting authorities so desired. Serving twenty-year sentences in the State's prison, defendants' whereabouts were well known and they were at all times available for trial. Stewart's arrest was in no way a prerequisite to the prosecution of Johnson and McCoy. Prima facie, however, their testimony was necessary to Stewart's conviction, for — so far as the record declares — only appellant and McCoy knew of his participation in the robbery. Without doubt the sheriff took notice of the possibility that, after they had been tried and sentenced, the two men might be unwilling to testify against Stewart and that an impending charge of crime against them might be very helpful in securing this testimony for the State.

The transcript of the trial, conducted four years and five months after the commission of the crime charged, engenders no doubt as to defendant's guilt, nor does it suggest that his incarceration during the intervening years deprived him of any witness whose testimony might have created a doubt. (*See Taylor v. United States, supra.*) Obviously, we cannot say with certainty that the record would not have been different had defendant been tried in November 1963. We can say with assurance, however, that the record discloses the possibility of prejudice to defendant from the delay between the issuance of the warrant and the return of the indictment.

[19] During December 1968, having served one-fourth of his twenty-year sentence, defendant was eligible for parole. G.S. 148-58. The filing of the detainer on 29 September 1967 could have had only an adverse effect upon such consideration. *State v. Milner, supra.*

[1] In 1968, when Judge Parker pronounced the twenty-year sentence in this case, defendant had served approximately four years and four months of the twenty-year sentences imposed in Wilson. His Honor could, of course, have permitted the Nash County sentence to run concurrently with the remaining fifteen years and eight months of the Wilson judgment. Instead, he directed that the two sentences be served consecutively.

The record suggests that in 1963, when Judge Fountain imposed upon defendant the two concurrent twenty-year sentences for armed robbery in Wilson, he also took into consideration the Nash robbery, to which defendant had confessed in the office of Wilson's Chief of Police. The same solicitor represents Edgecombe, Wilson, and Nash counties, and it is inconceivable that when defendant and McCoy

entered their pleas in Wilson the law enforcement officers there failed to inform him of the Nash County robbery and that he failed to inform the judge. The solicitor's omission to send to the grand jury a bill against the two men at the November 1963 Session of Nash (when the matter was fresh in his mind) corroborates this view. It is reasonable to believe that, had he not considered the matter closed, the indictment would have been obtained promptly. He is unable to explain the omission because the passage of time has left him with no recollection of Johnson, McCoy or Stewart. Certainly, under the circumstances, defendant himself was justified in assuming that the charges in the unserved warrant had been dropped.

Had this case been tried during the fall of 1963 the record suggests (1) that defendant would have pled guilty in Nash just as he had done in Edgecombe and Wilson, and (2) that Judge Fountain, who had imposed concurrent sentences for the Edgecombe and Wilson crimes when the whole picture of defendant's recent conduct was before him, would have permitted the Nash County sentence to run concurrently with the others. If so, as of now, the cost of the delayed prosecution to defendant is twenty additional years in prison. This is, of course, a matter of conjecture, but the point is that such conjecture should not have been allowed to arise. This case exemplifies a situation which the speedy-trial guarantee was intended to prevent. Indisputably, the delay created both the possibility and the probability of prejudice. *Barker v. Municipal Court, supra.*

Here the formal complaint (the warrant for defendant's arrest) was filed, as it should have been, at the time the State's investigation of the robbery was complete and the testimony to convict defendant of it was available. At the same time, the duty devolved upon the prosecution to indict defendant promptly and then to try him without unreasonable delay. Instead of according him his right to a speedy trial, however, the prosecution deliberately delayed defendant's indictment for four years for the State's convenience or supposed advantage. The apprehension and conviction of criminals are, of course, the ultimate and legitimate objectives of dedicated law-enforcement officers. In pursuit of this goal, however, they may not impinge upon a specific constitutional guarantee intended for the protection of "the citizen faced with the loss of his liberty by reason of criminal charges." *See Ross v. United States, supra* at 213.

The facts of this case are analogous to those in *People v. Kenyon,* 39 Misc. 2d 876, 242 N.Y.S. 2d 156 (1963). In March 1939, three indictments for felony were returned against Kenyon. The district attorney tried the defendant on one and held the other two until

1945, when the defendant was tried and convicted. In holding that Kenyon had been denied his right to a speedy trial on the second and third indictments, the court said that the true motivation of the prosecution "must remain unanswered but it is reasonable to infer that the attitude was 'we'll arraign him on one indictment and hold the others for future ammunition.' Thus the additional indictments were a virtual Sword of Damocles, to be kept suspended over the head of the defendant. . . ." It also noted that the delay resulted in "arrogating to the prosecutor the decision as to defendant's obtaining possible concurrent sentences." 242 N.Y.S. 2d at 159.

Similarly, in *State v. Milner, supra,* two warrants were filed against the defendant while he was incarcerated in the Ohio penitentiary for another offense. Nine years and one month later, one indictment was returned and, upon defendant's parole, he was returned to Dayton for trial. In dismissing the delayed prosecution, McBryde, Judge, noted (1) that this process of trial could extend over the lifetime of a defendant against whom several charges were pending, and (2) that by merely filing the detainers the police had failed to prosecute the criminal action to a point where defendant could have demanded a trial. His logic is inescapable:

"Where more than one charge exists it is necessary to dispose of all promptly, by consolidation if the facts permit. If consolidation is not possible the defendant may be sentenced and returned from confinement to stand trial for the remaining offenses.

"*   *   *

"Delaying the indictment and the trial on one offense after another, until time is served on each consecutively, and served under circumstances described, is a denial of a speedy trial. It requires no intellectual gymnastics to see that such a plan designed to indefinitely extend the punishment and postpone the liberty of an individual is a violation of constitutional rights.

"The exercise of such control over a form of installment punishment, compounded by detainers, is a usurpation of the power of the court, of the jury, and of the parole board to determine guilt and punishment under the indeterminate sentence law. Whether consecutive or concurrent sentences should be imposed for more than one offense rests exclusively with the court and it cannot be assumed by any other agency." *Id.* at 191-92.

In this case, we have no occasion to decide when, if ever, a defendant who moves to dismiss a prosecution on the ground that he has been denied a speedy trial must show actual prejudice or under

what circumstances, if any, the State must show that a defendant suffered no material prejudice beyond that incident to ordinary and inevitable delay. We note, however, that, whatever the actualities, proof of either prejudice or nonprejudice may well be an impossible task.) See the discussions of this confused and difficult problem in 20 Stan. L. Rev. 476, 493-501 (1968), 51 Va. L. Rev., 1587, 1591-97 (1965).

[20]  We here hold that when there has been an atypical delay in issuing a warrant or in securing an indictment and the defendant shows (1) that the prosecution deliberately and unnecessarily caused the delay for the convenience or supposed advantage of the State; and (2) that the length of the delay created a reasonable possibility of prejudice, defendant has been denied his right to a speedy trial and the prosecution must be dismissed.

[21]  A delay of four years in securing an indictment is, nothing else appearing, an unusual and an undue delay. *United States v. Lustman,* 258 F. 2d 475, 477 (2d Cir. 1958), *cert. denied,* 358 U.S. 880, 3 L. Ed. 2d 109, 79 S. Ct. 118 (1958). The four-year delay in this case was the purposeful choice of the prosecution, and it created the reasonable possibility that prejudice resulted to defendant. Therefore, the action against him must be dismissed. It is so ordered.

The decision of the Court of Appeals is reversed, and the cause remanded to that court with instructions that it direct the Superior Court to dismiss this prosecution.

Reversed.