John A. LASSITER, Appellant,

v.

R. L. TURNER, Warden, Central Prison, Appellee.

No. 12274.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 5, 1969.

Decided March 27, 1970.

Martin N. Erwin, Greensboro, N.C. (Court-assigned counsel) [Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., on the brief], for appellant.

Dale Shepherd, Staff Atty., Raleigh, N.C. (Robert Morgan, Atty. Gen. of N.C. and Jacob L. Safron, Staff Atty., Raleigh, N.C., on the brief), for appellee.

Before BRYAN, WINTER and BUTZ-NER, Circuit Judges.

WINTER, Circuit Judge:

This appeal raises the question of whether a prosecutor's threat to revive a related prosecution, nolle prossed five years before, deprives a guilty plea of its voluntary character where the plea was substantially motivated by the threat. The district judge concluded that the voluntariness of the plea was unaffected, and he refused habeas corpus. We conclude to the contrary and direct that the writ issue.

—I—

Upon his plea of guilty, John A. Lassiter was convicted of armed robbery at the April, 1960, Term of the Superior Court of Hertford County, North Carolina. He was sentenced to a term of eighteen to twenty years imprisonment. A charge of secret assault which was the subject of a related indictment was nolle prossed.[1]

In state post conviction proceedings, the judgment on the conviction of armed robbery was set aside because Lassiter had not been represented by counsel. Thereafter this case was set for retrial and counsel was appointed to represent him.

The record supports the findings of the district judge who found first that court-assigned counsel was of the opinion that the charge of armed robbery was defensible and that he entered a not guilty plea on Lassiter's behalf. The trial began in July, 1965, but was recessed on the first day when the venire of prospective jurors was exhausted before a jury was selected. The district judge's additional findings state what next transpired:

"3. Before leaving the courtroom, the prosecuting attorney (hereinafter referred to as Solicitor) told defense counsel he was contemplating reopening a charge of secret assault which had been nolle prossed at Petitioner's original armed robbery trial.

4. In response to the Solicitor's statement defense counsel asked the Solicitor whether he would accept a plea of guilty to a lesser included offense. The Solicitor indicated he would consider counsel's proposal.

5. That evening defense counsel discussed the nolle prossed charge with Lassiter. He told Petitioner he did not know whether state law permitted the Solicitor to reopen the secret assault charge, but that he would research the matter and advise him the following morning. He further told Lassiter to consider entering a plea of guilty to a lesser included offense in the event the Solicitor could reinstate the charge.

6. The next morning defense counsel advised Lassiter that the nolle prossed charge could be reinstated and discussed the alternative courses open to Petitioner. He advised Lassiter that if he pleaded not guilty to armed robbery, and if he was acquitted of that charge, the secret assault charge probably would be reopened; however, if he changed his plea to guilty to common law robbery, the nolle prossed charge probably would not be reinstated and he could receive a maximum of ten years imprisonment, and he would be eligible for parole in two and one-half years.

7. After consulting members of his family Lassiter decided to change his plea from not guilty of armed robbery to guilty of common law robbery.

8. Petitioner in open court stated to the trial judge that he had authorized his attorney to tender a plea of guilty of common law robbery. Petitioner also informed the trial judge that his plea was voluntary.[2]

9. Petitioner has not been tried on the secret assault charge." (District judge's footnote eliminated.)

[1]. This aspect of North Carolina's criminal procedure was explained in State v. Klopfer, 266 N.C. 349, 145 S.E.2d 909 (1966), and Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed. 2d 1 (1967). From the docket entry in the instant case, we understand that the secret assault charge against Lassiter could be restored to the trial docket only on order of the judge upon the Solicitor's (prosecutor's) application.

[2]. Lassiter told the trial judge that his plea was voluntary. However, the evidence shows that, after the plea bargain was struck, counsel advised Lassiter that he must testify that his plea was voluntary in order to have it accepted by the court. Moreover, Lassiter's statement that the plea was voluntary was made with the understanding that he could be tried for secret assault.

The district judge made no specific finding of Lassiter's motivation in tendering the guilty plea to the lesser included offense of common law robbery. However, his other findings lead us to conclude that the threat of reopening of the secret assault charge was the reason.

Lassiter pressed his claim in the state courts that his plea was involuntary because of the Solicitor's statement that he contemplated reopening the secret assault charge. He was granted an evidentiary hearing in the Hertford County Superior Court but relief was denied. His application for certiorari to the Supreme Court of North Carolina was denied on June 16, 1966. Thus, available state remedies have been exhausted. Because the state court findings were incomplete with regard to his claim, Lassiter was granted a plenary hearing in the district court. There, he also raised a question of sentence credit. The district judge did not consider this question because of Lassiter's failure to present it to the state courts. We do not reach it because of our overall disposition of the appeal.

—II—

■ Plea bargaining is well established in the administration of criminal justice. Properly conducted and fairly negotiated, plea bargaining serves a useful purpose for society, the prisoner and the quality of justice in those cases which must be tried. United States v. Williams, 407 F.2d 940, 948 (4 Cir. 1969); Alford v. North Carolina, 405 F.2d 340, 350 (4 Cir. 1968) (Haynsworth, C.J., dissenting); Am. Bar. Asso. Project on Minimum Standards for Criminal Justice, Standards Relating to Pleas of Guilty (Tent. Draft 1967) pp. 3, 10–11, 60–66; President's Commission on Law Enforcement and Administration of Justice, The Challenge of Crime in a Free Society (1967) pp. 134–136. In addition to other safeguards which limit the character of the negotiations and the subsequent agreement, an overriding constitutional limitation is that the plea must not have been induced by promises or threats which deprive it of the character of a voluntary act. Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962). When the plea is tendered to a lesser included offense, this limitation is as applicable as when it is tendered to the more aggravated offense charged.

■ The types of promises or threats which deprive a plea of its voluntary character are not susceptible of comprehensive definition so that no mere statement of the definition immediately delineates that which is proscribed. The cases which have held confessions involuntary reflect that proscribed threats, inducements and promises may be obvious, such as physical harm, or they may be more subtle, overbearing devices causing an accused to surrender his right not to incriminate himself. In considering the voluntary character of pleas of guilty, we must be no less alert to recognize the subtle devices which overbear an accused's will because the entry of a plea of guilty constitutes a waiver of *several* constitutional rights. A plea of guilty constitutes a waiver of the right to trial and the right of confrontation, in addition to a waiver of the privilege against self-incrimination. Boykin v. Alabama, 395 U.S. 902, 89 S.Ct. 1739, 23 L.Ed.2d 216 (1969); McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (1969).

■ We do not attempt to define every instance in which a promise or inducement which effects a guilty plea is permissible or is proscribed. But we have no difficulty in concluding that a threat by a prosecutor to do what the law will not permit, if it motivates a defendant ignorant of the impossibility, renders the plea involuntary. In such a circumstance, the representation takes on the character of a trick or an artifice inducing the plea, even though the prosecutor is also unaware of its forbidden character. In effect, the defendant is deceived into making the plea, and the deception prevents his act from being a true act of volition. *Cf.*, McCarthy v.

United States, *supra*; Anders v. Turner, 379 F.2d 46 (4 Cir. 1967).

We turn to a consideration whether a revival of the charge of secret assault was permitted under state or federal law.

—III—

In State v. Johnson, 275 N.C. 264, 167 S.E.2d 274 (1969), the Supreme Court of North Carolina summarized North Carolina law with regard to the right to a speedy trial. It said:

"The fundamental law of the State secures to every person *formally accused* of crime the right to a speedy and impartial trial, as does the Sixth Amendment to the Federal Constitution (made applicable to the State by the Fourteenth Amendment, Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967))."

167 S.E.2d 277–278. So far as this statement was a pronouncement of state organic law, it represented nothing new or novel. The North Carolina rule existed prior to the decision in *Johnson*. State v. Lowry, 263 N.C. 536, 139 S.E.2d 870 (1965); State v. Patton, 260 N.C. 359, 132 S.E.2d 891 (1963).

■ Precisely when under the North Carolina law, in the course of a prosecution, the right to a speedy trial has been denied cannot be stated with certainty. "No general principle fixes the exact time within which a trial must be had. Whether a speedy trial is afforded must be determined in the light of the circumstances of each particular case." State v. Lowry, supra. 139 S.E.2d 870, 875. In State v. Johnson, *supra*, the claimed denial of a speedy trial arose from a delay of four years in obtaining an indictment after a formal charge was entered and an arrest warrant issued but not formally served. The Court said that the test of whether a speedy trial had been denied in that case was the same as in a case where the delay occurred after indictment. The Court's statement of the test and of the appropriate relief is relevant here:

"We here hold that when there has been an atypical delay in issuing a warrant or in securing an indictment and the defendant shows (1) that the prosecution deliberately and unnecessarily caused the delay for the convenience or supposed advantage of the State; and (2) that the length of the delay created a reasonable possibility of prejudice, defendant has been denied his right to a speedy trial and the prosecution must be dismissed."

167 S.E.2d at 283.

■ In Lassiter's case there can be no question but that any delay in the trial of the secret assault charge was at the instance of the prosecutor. It was the prosecution which requested an indefinite delay in the first instance and it was the prosecution which permitted the lapse of five years between the indictment and the statement of intention conditionally to revive it. The prosecution understandably may have concluded that the state's interests were fully served by the substantial sentence meted out on the conviction of armed robbery so that there was no useful purpose in trying the secret assault case. The first part of the test for determining the denial of a speedy trial under North Carolina law was clearly met.

The second part of the test is more troublesome to apply to Lassiter's case. The record does not reflect facts like those in *Johnson* from which we can speculate as to actual or threatened prejudice to Lassiter. However, the passage of five years gives rise to the likelihood that witnesses will be dispersed and memories dimmed. It alone is enough to create "a reasonable possibility of prejudice." In *Johnson* the passage of time was four years, and the Court concluded that the right was denied. United States v. Lustman, 258 F.2d 475 (2 Cir. 1958), cert. den., 358 U.S. 880, 79 S.Ct. 118, 3 L.Ed.2d 109 (1958), was cited in *Johnson* to support the statement that "[a] delay of four years in securing an indictment is, nothing else appearing, an unusual and an undue delay." 167 S.E.2d

at 283. In *Lustman*, like Lassiter's case, the delay was in excess of five years. *Lustman*, in accord with the weight of other federal authority cited therein, stated that such a delay constituted the denial of the right to a speedy trial, without the need for showing prejudice to the accused. We conclude that North Carolina's requirement of "a reasonable possibility of prejudice" is met by the probable results of the lapse of such a substantial period.

Thus, under North Carolina law, Lassiter's right to a speedy trial on the secret assault charge had been denied him, and he would be entitled to its dismissal. We have no need to consider the retroactivity of the North Carolina rule, because it was as stated at the time that Lassiter tendered his guilty plea. Since Lassiter's guilty plea was motivated by a misrepresentation of possible consequences under North Carolina law, his plea lost its voluntary character.

—IV—

We reach the same conclusion when we consider Lassiter's Sixth Amendment protection under federal law.

In Klopfer v. North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967), the Supreme Court condemned the North Carolina practice of "nolle prosequi with leave" as denying the Sixth Amendment right, made applicable to the states through the Fourteenth Amendment, to a speedy trial.[3] Although in *Klopfer* the nolle prosequi was with leave, we do not read the scope of the holding to be limited to this type of disposition. Under North Carolina law, a nolle prosequi, not with leave, does not terminate the prosecution. It may be re-

opened with the court's permission. The possibility that permission may be granted at some future date generates the same invidious consequences that led to the *Klopfer* decision.

In *Klopfer* the accused objected to having his case shelved. We have no doubt that in 1960 Lassiter did not object to the suspension of the secret assault prosecution. This is not to say, however, that there was a waiver of the right to a speedy trial. There is no evidence that he knew of his right to a speedy trial or that he intended to relinquish it. *Klopfer* held that the right guaranteed by the Sixth Amendment extends, through the Fourteenth Amendment, to persons accused under state law. If the 1967 *Klopfer* decision is retrospective in effect, Lassiter could not, as a matter of federal constitutional law, have been tried in 1965 on the 1960 secret assault charge. If it is retrospective, his guilty plea to common law robbery was motivated by a misrepresentation of the true alternatives, so that the plea was involuntary.

North Carolina argues that since *Klopfer* was decided after Lassiter's plea, that decision may not be invoked to invalidate the plea.

Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and De Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968), are the controlling authorities on the question of retroactivity of constitutional rules of criminal procedure. The factors to be considered, as stated in *Stovall* and repeated in *De Stefano*, are three: "(a) the purpose to be served by the new standards, (b) the extent of the reliance by law enforcement authorities on the old

---

3. The essence of decision appears from the following extract from the opinion: "The pendency of the indictment may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the 'anxiety and concern accompanying public accusation,' the criminal procedure condoned in this case by the Supreme Court of North Carolina clearly denies the petitioner the right to a speedy trial which we hold is guaranteed to him by the Sixth Amendment of the Constitution of the United States." Klopfer v. North Carolina, 386 U.S. at 222, 87 S.Ct. at 993.

standards, and (c) the effect on the administration of justice of a retroactive application of the new standards." 388 U.S. at 297, 87 S.Ct. at 1970; 392 U.S. at 633, 88 S.Ct. 2093. A consideration of these factors leads us to conclude that *Klopfer* should be applied retroactively.

*Klopfer* states that the purpose of applying the Sixth Amendment right to a speedy trial is to avoid "indefinitely prolonging * * * oppression, as well as the 'anxiety and concern accompanying public accusation.'" 386 U.S. at 222, 87 S.Ct. at 993. Another purpose is the prevention of increased difficulty in defense of stale charges. United States v. Ewell, 383 U.S. 116, 86 S.Ct. 773, 15 L.Ed.2d 627 (1966), cited in Klopfer, 386 U.S. at 222, 87 S.Ct. 988 n. 6. The Sixth Amendment right to a speedy trial is particularly concerned with the fairness of the fact-finding process to determine guilt or innocence. There is involved a more important consideration than a prophylactic rule to require prosecutors to comply strictly with a rule of criminal procedure. Moreover, where *Klopfer* is applicable in the context of the voluntariness of a plea of guilty, many other constitutional rights are at issue. A plea of guilty includes, at least, a waiver of the right not to incriminate one's self, the right to a trial by jury, the right of confrontation, and the right of cross-examination, and some of these have been held to have retrospective application. Pointer v. Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Barber v. Page, 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); Brookhart v. Janis, 384 U.S. 1, 86 S.Ct. 1245, 16 L.Ed.2d 314 (1966); Berger v. California, 393 U.S. 314, 89 S.Ct. 540, 21 L.Ed.2d 508 (1969). Where the end product of applying *Klopfer* is the conclusion that the guilty plea was involuntary, the rule that retroactively excludes the use of coerced confessions becomes analogous. Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964).

*Klopfer* did not represent such a substantial departure from existing law that either prior reliance or the potential impact upon the administration of justice requires only prospective application. In *Klopfer* there was an exhaustive analysis of the law and practice in other jurisdictions from which we conclude that there was little reliance on an asserted right to reinstate a nolle prossed indictment at an indefinite future date, and further that the impact of declaring that no such right exists would be slight. Specifically, the Court stated that the argument that the right to a speedy trial does not afford affirmative protection against an unjustified postponement of trial "has been explicitly rejected by every other state court [other than North Carolina] which has considered the question" (386 U.S. at 219, 87 S.Ct. at 991); that "[t]hat conclusion has also been implicitly rejected by the numerous courts which have held that a nolle prossed indictment may not be reinstated at a subsequent term" (386 U.S. at 219–220, 87 S.Ct. at 991–992); and that "each of the 50 States guarantees the right to a speedy trial to its citizens" (386 U.S. at 226, 87 S.Ct. at 995). More significantly, the Court found that of the thirty states which permit a prosecuting official to enter a nolle pros, thirteen proscribe the reinstatement of the indictment at a subsequent term. Several permit reinstatement at an indefinite future term only when the defendant has consented or cannot be brought before the court. "[O]f the remaining States, only North Carolina and Pennsylvania have held that a nolle prossed indictment could be reinstated that a subsequent term." 386 U.S. at 220, 87 S.Ct. at 992, n. 5.

■ Applying *Stovall* and *De Stefano*, we hold that *Klopfer* may be applied retroactively and may be applied by us in this case to render Lassiter's 1965 plea to common law robbery involuntary. All of the *Stovall* and *De Stefano* considerations weigh in favor of the retroactivity of *Klopfer*. We conclude that the plea was involuntary under federal standards because it was induced by a consideration illegal under both state and federal law.

—V—

The district judge should issue the writ, affording the state the opportunity to retry Lassiter on the charge still pending.

Reversed and remanded.

ALBERT V. BRYAN, Circuit Judge (concurring):

I join in the result of the opinion because it is fully supported by the State law, but I see no justification for a determination that *Klopfer*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1, is retroactive. The latter is but an obiter addendum to a clear and admirable exposition of the case.

I do not now imply any view on the right or wrong of its enunciations upon *Klopfer*. For me, it is unwise to decide when decision is not required. Only for that reason do I dissociate myself with this portion of the opinion.

Retrospectiveness of a Supreme Court pronouncement, as much litigation has demonstrated, is not an uncomplicated Constitutional problem. See, e. g., Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969); Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967); Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965). Its resolution should await the necessity and not, as now, be answered by anticipation.

When State law unequivocally warrants a decision, as we unanimously now hold, the Supreme Court, unlike our course here, declines to reach Constitutional or other Federal grounds for sustenance. See, e. g., Jankovich v. Indiana Toll Road Comm'n, 379 U.S. 487, 489, 85 S.Ct. 493, 13 L.Ed.2d 439 (1965); Fox Film Corp. v. Muller, 296 U.S. 207, 211, 56 S.Ct. 183, 80 L.Ed. 158 (1935); cf. Henry v. Mississippi, 379 U.S. 443, 85 S.Ct. 564, 13 L.Ed.2d 408 (1965); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed. 2d 837 (1963). This is precedent worthy to be followed presently.