STATE OF NORTH CAROLINA v. DAVID HACKETT

No. 7530SC223

(Filed 18 June 1975)

1, Constitutional Law § 30— speedy trial — Sixth Amendment — preindictment delay — due process

While the Sixth Amendment right to a speedy trial does not apply until the defendant is accused, either by indictment, information or arrest, the due process clause of the Fourteenth Amendment is applicable and would require dismissal of the indictment if the preindictment delay caused substantial prejudice to defendant's right to a fair trial.

2. **Constitutional Law § 30— preindictment delay — due process**
   Defendant's right to due process was not violated by the delay between alleged narcotics offenses on 9 May 1974 and his indictment and arrest for the offenses on 30 September 1974, though defendant contended the delay had resulted in loss of memory of the events of the day in question, where the reason for the delay in indicting defendant was to permit the completion of an investigation of drugs at Western Carolina University by undercover agents and to prevent dispersal of other persons engaged in the drug traffic.

APPEAL by defendant from *Thornburg, Judge*. Judgment entered 5 December 1974 in Superior Court, JACKSON County. Heard in the Court of Appeals 14 May 1975.

Defendant pled not guilty to charges of on 9 May 1974 (1) sale and delivery of more than five grams of marijuana, and (2) possession of more than five grams of marijuana with intent to sell. On 30 September 1974, the indictment was returned by the grand jury, and on the same day defendant was arrested.

The case was calendared for trial during the week of the Session beginning 2 December 1974. On Tuesday, 3 December, defendant filed a written motion to dismiss on the grounds that the State had purposely and arbitrarily delayed trial, and that the delay had resulted in loss of memory of events on 9 May 1974 and was prejudicial to his defense.

In the hearing on the motion, Dan Crumley, employed as undercover agent to obtain evidence of drug offenses on the campus of Western Carolina University, testified that he drove out to a house in the Glenville-Cashiers area, purchased a bag of marijuana from defendant for $10.00, and that his investigation was complete on that day. Crumley gave the bag to S.B.I. Agent Charles Hess on 14 May, who in turn gave it to S.B.I. Agent James T. Maxey. Agent Maxey mailed the bag to the Chemistry Laboratory of the S.B.I. in Raleigh.

Agent Maxey testified that Dan Crumley and two others were used as undercover agents in a drug operation in the area of Western Carolina University during the period from late January 1974 to the following July or August, and the defendant had a continuing reputation for dealing in drugs.

Assistant District Attorney John Snow testified that if there had been grand jury action on the drug charges before the college closed in August, the students engaged in drug traf-

State v. Hackett

fic would have dispersed and the action would have exposed the cover of the agents. Consequently, the delay was not to gain any advantage for the State at trial.

Defendant testified that he did not remember anything that happened on 9 May but he did remember not seeing Dan Crumley on that date; that he graduated from Western Carolina on 9 August and went to his home in Greenwood, South Carolina.

The trial judge found facts and concluded: "That although earlier date of charge would have made easier the preparation of a defense to the charge lodged against the defendant, it is clear that the State delayed issuance of the bill of indictment or the initiation of a charge for the purpose of bringing to a successful conclusion a massive effort to curtail or possibly destroy the illegal distribution of controlled substances in the Western Carolina College area;" and the court further concluded that the defendant's constitutional rights had not been violated. The motion to dismiss was denied.

At trial, undercover agent Crumley testified that he was a student at Western Carolina University and he had known the defendant for two years; that when he went to the house in the Glenville-Cashiers area and bought the marijuana from defendant there were ten to fifteen people in the house; and that he transferred to Elon College in June. The State's evidence also tended to show chain-of-custody of the marijuana to the S.B.I. drug laboratory in Raleigh and return; and that based on chemical analysis the substance was marijuana. Defendant testified that he had never been in a house in or near Cashiers, and that Crumley had accused him of stealing his television in early spring, 1973.

On the charge of selling marijuana the jury was unable to agree and the trial court declared a mistrial. The defendant was convicted of possession of marijuana with intent to sell; he appealed from the judgment entered 5 December 1974 imposing a jail sentence of five years, and suspending for five years that portion of the sentence beginning after 6 December 1976, then placing defendant on probation for five years.

*Attorney General Rufus L. Edmisten, by Associate Attorney Robert P. Gruber, for the State.*

*Erwin and Beaty, by James A. Beaty, Jr., for defendant.*

CLARK, Judge.

We have reviewed all assignments of error preserved by the defendant and find it would serve no useful purpose to discuss any of them except those which raise the following question: Did the trial court err in denying the motion to dismiss on the grounds that the State's delay in charging and arresting the defendant violated due process and his right to a speedy trial?

In *Klopfer v. North Carolina*, 386 U.S. 213, 18 L.Ed. 2d 1, 87 S.Ct. 988 (1967), the Supreme Court of the United States held that the Fourteenth Amendment made applicable to the states the Sixth Amendment guaranty of a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 33 L.Ed. 2d 101, 92 S.Ct. 2182 (1972), sets out the criteria by which the speedy trial right is to be judged.

[1] However, the factual situation of the case at bar does not raise the question of violation of the Sixth Amendment right to a speedy trial because this provision has no application until the defendant is accused, either by indictment, information or arrest. Here the defendant contends that the delay between the alleged time of the offense and the indictment and arrest was prejudicial to him. Though the Sixth Amendment has no application here, the due process clause of the Fourteenth Amendment is applicable and would require a dismissal of the indictment if the preindictment delay caused substantial prejudice to the defendant's right to a fair trial. *United States v. Marion*, 404 U.S. 307, 30 L.Ed. 2d 468, 92 S.Ct. 455 (1971).

Exactitude is impossible in determining when the delay is so long that due process is denied. In the exercise of the adjudicative process the courts should base their determination on all of the circumstances, without the restriction of narrow procedural rules or limiting criteria.

The State has the duty of bringing the accused to trial in our system where justice is supposed to be speedy but deliberate. Where the State delays deliberately to gain a trial advantage, this should be given great weight; delay as a result of negligence should be weighed less heavily.

On the other hand, the defendant in support of his motion to dismiss has the responsibility of asserting his right to due process. Except where the delay is so unusually long that preju-

State .v. Hackett

dice may be inferred, he must show the seriousness of his deprivation, such as death or disappearance of witnesses, or impairment of memory. The court should give significant weight to creditable evidence of his deprivation but little or no weight to a purely formal and unsupported objection or to a false claim which is a part of his defense strategy.

[2]  Turning now to the circumstances of the case before us, we first note that the defendant is charged with a drug offense in which the State relies primarily on the testimony of an undercover agent. We must recognize and consider the role played by informants and undercover agents in the apprehension of drug violators, and the need in most instances to keep their identity confidential for the purpose of protecting their safety and continuing their use effectively. In this case the State used the witness Dan Crumley and two others as undercover agents in a program to discover drug offenders at Western Carolina University during the period from January-February to July-August, 1974. Though Crumley left the campus in June, there was evidence that the program continued until the end of the summer session in early August and that arrests prior to that time would have resulted in a dispersal of other student offenders.

The indictment was presented to the grand jury and returned on the first day of the September 30th, 1974 Session of the Superior Court. The preceding mixed session of the court in Jackson County was that of 24 June, 1974.

The defendant claimed that because of the delay in indictment and arrest his memory was impaired or lost; that he remembered none of the events of the day in question; but that on that day he was not in the house in the Glenville-Cashiers area referred to by undercover agent Crumley. Admittedly, it is difficult to offer supporting evidence of loss of memory, but it is noted that the record on appeal does not reflect that the defendant moved for a bill of particulars or made any discovery effort to determine the identity of the owner, or tenant, or the ten to fifteen persons that Crumley testified were present in the house when he bought the marijuana from defendant. Under these circumstances the defendant's claim of prejudice loses some of its force.

The defendant relies on *State v. Johnson*, 275 N.C. 264, 167 S.E. 2d 274 (1969), which involved a preindictment delay

of four years while the defendant was in prison for other crimes. Justice Sharp (now Chief Justice), for the Court, writes: "A delay of four years in securing an indictment is, nothing else appearing, an unusual and an undue delay. [Citations omitted.] The four-year delay in this case was the purposeful choice of the prosecution, and it created the reasonable possibility that prejudice resulted to defendant. Therefore, the action against him must be dismissed. . . ." 275 N.C. at 277.

The defendant also relies on *Ross v. United States*, 349 F. 2d 210 (D.C. Cir. 1965), cited with approval in *State v. Johnson, supra,* wherein the court held that a seven-month delay between a narcotics offense and the swearing out of a complaint violated defendant's right to due process because it interfered with defendant's ability to present an effective defense.

*State v. Johnson, supra,* involved an inordinate delay deliberately caused by the State which was sufficient in itself to create the inference or presumption of prejudice to defendant. In *Ross v. United States, supra,* it appears that the weakness of the government's case, and particularly the unreliability of the identification of the accused, was given significant weight by the court in reaching its decision. In our opinion it is appropriate for the court to consider whether the delay increased the probability of an erroneous conviction of an innocent man. We find the *Johnson* and *Ross* cases clearly distinguishable. We find more comparable circumstances in *United States v. Jackson,* 504 F. 2d 337 (8th Cir. 1974), where there was a delay of eleven months between the drug offenses and indictment, and in *United States v. Norton,* 504 F. 2d 342 (8th Cir. 1974), where there was a delay of five and one-half months between the drug offense and indictment. In both cases the convictions were upheld.

In the conclusion of the learned and able trial judge that the defendant's right to due process was not denied, and in the trial, we find.

No error.

Chief Judge BROCK and Judge ARNOLD concur.