IN THE SUPREME COURT OF NORTH CAROLINA

2022-NCSC-59

No. 457PA20

Filed 6 May 2022

STATE OF NORTH CAROLINA

v.

KHALIL ABDUL FAROOK

On discretionary review pursuant to N.C.G.S. § 7A-31 of a unanimous decision of the Court of Appeals, 274 N.C. App. 65 (2020), reversing an order denying defendant's motion to dismiss for a violation of his Sixth Amendment right to a speedy trial entered on 8 October 2018 by Judge Anna Mills Wagoner in Superior Court, Rowan County, and vacating judgments entered on 10 October 2018 by Judge Anna Mills Wagoner in Superior Court, Rowan County. Heard in the Supreme Court on 8 November 2021.

*Joshua H. Stein, Attorney General, by John W. Congleton, Assistant Attorney General, for the State-appellant.*

*Sarah Holladay for defendant-appellee.*

EARLS, Justice.

Over six years elapsed between the initial indictment of defendant Khalil Abdul Farook on 19 June 2012 for multiple charges arising out of an incident where Mr. Farook, driving impaired, hit and killed two people riding a motorcycle and his trial that began on 8 October 2018. The trial court denied his pretrial motion to

dismiss on speedy trial grounds and he was convicted by a jury of felony hit and run resulting in serious injury or death, two counts of second-degree murder, and attaining violent habitual felon status. He was sentenced to two terms of life imprisonment without the possibility of parole, plus twenty-nine to forty-four months. Mr. Farook appealed to the Court of Appeals asserting that the trial court erred in denying his motion to dismiss.

¶ 2        On appeal, the Court of Appeals reversed the trial court's order and vacated defendant's convictions on the grounds that the delay in his case was unjustified and violated his Sixth Amendment right to a speedy trial, applying the balancing framework set forth in *Barker v. Wingo,* 407 U.S. 514 (1972). *State v. Farook*, 274 N.C. App. 65, 88 (2020). Before the trial court, the State's explanation for its delay in bringing Mr. Farook to trial centered on the testimony of one of Mr. Farook's attorneys, who testified that it was his strategy to delay the case in the hope of obtaining a better outcome for his client. The Court of Appeals held that eliciting this information from Mr. Farook's attorney, while the attorney was testifying for the State, violated Mr. Farook's attorney-client privilege by revealing strategic decisions the attorney made on behalf of his client. *Id.* at 84. Because this testimony should not have been admitted, and because the State could not carry its burden of attempting to explain the trial delay without the testimony when considering the weight of the evidence under the *Barker* test, the Court of Appeals concluded that Mr. Farook's

motion to dismiss should have been granted. *Id.*

¶ 3          We affirm the Court of Appeals' holding on the evidentiary question and conclude that the trial court improperly admitted the testimony of Mr. Farook's prior attorney where there was no waiver of the attorney-client privilege. Because the trial court plainly erred in admitting the testimony of Mr. Farook's former attorney as evidence against him without justification or waiver, the trial court's order must be reversed. However, the State may have had alternative ways to put into evidence the same facts the attorney testified to if the improperly admitted testimony had not been admitted in the first place. The State may also have decided to rely on entirely different facts not elicited before the trial court if it had not been allowed to introduce the improperly admitted testimony. While the delay in this case is extraordinary and the facts in the record relied on by the Court of Appeals in concluding that Mr. Farook's Sixth Amendment rights were violated appear largely uncontested, we nevertheless remand this case for a rehearing on Mr. Farook's speedy trial claim rather than evaluate the evidence at this stage. Accordingly, we reverse the holding of the Court of Appeals to the extent that it allowed Mr. Farook's motion to dismiss. *Cf. State v. Salinas*, 366 N.C. 119, 124 (2012) (remanding for further factual findings where the trial court improperly relied upon the allegations presented in defendant's affidavit when making its findings of fact).

## I.  Background

¶ 4       In 2012, Mr. Farook was involved in a fatal automobile crash when his vehicle crossed the centerline of the road and collided with a motorcycle being ridden by Tommy and Suzette Jones. Mr. and Mrs. Jones died following the collision. Another driver, Miguel Palacios, witnessed the collision. Mr. Palacios observed Mr. Farook approach the bodies of the victims and then leave the scene of the accident.

¶ 5       Armed with a description of the suspect, police officers traveled to the address of a residence located near the scene of the collision. The apparent owner of the home led officers into a room where one of the officers observed the name "Khalil Farook" on a prescription bottle atop a coffee table. The property owner then explained that "Donald Miller" had changed his name and that "Donald Miller" and "Khalil Farook" were the same person. Mr. Farook turned himself in to the authorities on 19 June 2012 after warrants had been issued for his arrest on various charges stemming from the collision. Later that month, Mr. Farook was indicted for reckless driving to endanger, driving left of center, driving while license revoked, felony hit and run resulting in serious injury or death, driving while impaired, resisting a public officer, and two counts of felony death by vehicle.

¶ 6       Mr. Farook was represented by four different attorneys during the pendency of his case. In early July 2012, following his arrest, Mr. James Randolph was appointed to represent Mr. Farook. Thereafter, after his case had been pending for a

year, Mr. Farook wrote to the trial court on 12 July 2013 stating that he had been incarcerated for a year and was concerned about the status of his case, particularly because he had not yet received discovery. Subsequently, Mr. James Davis was appointed as Mr. Farook's second attorney in the case. Mr. Davis replaced Mr. Randolph in early December 2014.[1] Mr. Davis represented Mr. Farook for nearly three years, during which time the case remained pending, and Mr. Farook remained incarcerated.

¶ 7     Ultimately, Mr. Davis withdrew from Mr. Farook's case because of the demands of his other work. He was replaced as counsel in July 2017 by Mr. David Bingham, Mr. Farook's third attorney. On 17 July 2017, over five years after the

---

[1] There is some evidence in the record tending to suggest that Mr. Davis began representing Mr. Farook in 2012. Specifically, the trial court announced at a hearing on 6 August 2012 that it would appoint Mr. Davis to replace Mr. Randolph as counsel for Mr. Farook; in a 2018 order on a motion to dismiss, the trial court found Mr. Davis's appointment date to be 6 August 2012; in Mr. Davis's motion to withdraw as counsel he attests that he began representing Mr. Farook on or about 27 August 2012; and Mr. Farook asserted in a pro se motion to dismiss for ineffective assistance of counsel that Mr. Davis was appointed as his attorney in August 2012. Notwithstanding this evidence, the trial court's order of assignment specifies that Mr. Davis was ordered to serve as Mr. Farook's attorney on 10 December 2014. Similarly, although the Court of Appeals' opinion also acknowledges discrepancies in the record regarding Mr. Davis's date of appointment as counsel, the court nonetheless observed that on 10 December 2014 Mr. Davis was explicitly appointed to replace Mr. Randolph as Mr. Farook's counsel. *State v. Farook*, 274 N.C. App. 65, 66 (2020). Likewise, in its brief filed in this Court, the State cites the 10 December 2014 order when referencing Mr. Davis's appointment as Mr. Farook's attorney. Any discrepancy in the record on this point has no bearing on our ultimate conclusion that at the hearing on Mr. Farook's speedy trial motion, Mr. Davis divulged privileged, inadmissible information concerning his representation of Mr. Farook—testimony that was improper irrespective of whether Mr. Davis began representing Mr. Farook in 2012 or 2014.

collision, Mr. Farook was indicted for the following new, more serious charges: two counts of second-degree murder and one count of attaining violent habitual felon status. In September 2017, Mr. Bingham withdrew from the case due to a conflict of interest. Mr. Chris Sease, Mr. Farook's fourth attorney, was appointed to represent him in late September 2017. He represented Mr. Farook through the trial in October 2018.

¶ 8        In March 2018, Mr. Farook wrote to the clerk of court asking for "information (motions) concerning my t[rial] delay for the years of 2013, 2014, 2015, 2016, 2017 that the district attorney['s] office file[d] to delay my trial." The clerk responded, "There are no written motions in any of your files." Mr. Farook filed a pro se motion to dismiss the charges against him on the grounds of a speedy trial violation and ineffective assistance of counsel (IAC) in early September 2018. In the pro se motion, Mr. Farook alleged that his previous attorney, Mr. Davis, did not speak to him until fifty-seven months after Mr. Davis was appointed, that Mr. Farook never agreed to any delays in his trial, and that Mr. Farook had been prejudiced both by the deficient representation that he had received from Mr. Davis and the delay in his case.

¶ 9        Later that same month, Mr. Sease filed a motion to dismiss for a speedy trial violation alleging that Mr. Farook was not charged or served with indictments for second-degree murder and attaining violent habitual felon status until July 2017 even though the collision occurred five years earlier in June 2012. The motion alleged

that Mr. Farook believed the State delayed the case "in an attempt to oppress, harass and punish him further"; that due to the extensive delay he was "prejudiced by an inability to adequately assist his defense attorney" in preparing for trial; and that "it is arguable" that he never would have been charged with second-degree murder had the case been resolved between 2012 and 2017 rather than long after the date of the offense. The State opposed the motion.

Notably, in his motion to dismiss, Mr. Farook chronicled the prolonged delay that evolved over the life of his case from the date of his arrest in June 2012 to his eventual prosecution in October 2018. After Mr. Farook rejected plea offers from the State in August 2012, the case was not calendared again until the week of 18 February 2013, almost six months later. The case was first calendared for the week of 6 August 2012, the date on which Mr. Randolph withdrew as Mr. Farook's attorney. Between 2013 and 2018, Mr. Farook's case was calendared but not reached *nine* times. After the case had been calendared but not reached five times, Mr. Farook was indicted on more serious charges. No motion to continue the case was ever filed by the State or Mr. Farook. *Cf. State v. Farmer,* 376 N.C. 407, 409 (2020) (emphasizing that the defendant filed his motion for a speedy trial approximately two months after he acquiesced to the State's request to continue his case from the January 2017 calendar to the next trial session).

As illustrated below, Mr. Farook's case was repeatedly delayed as it continued

to be calendared but not reached while Mr. Farook remained imprisoned for 2,302

days.

| | |
|---|---|
| **11 July 2012** | Mr. Randolph is appointed by court order to represent Mr. Farook. |
| **18 February 2013** | Mr. Farook's case was calendared but not reached. |
| **19 March 2013** | Mr. Farook's case was calendared but not reached. |
| **16 April 2013** | Mr. Farook's case was calendared but not reached. |
| **12 July 2013** | Mr. Farook wrote a letter to Judge Wagoner stating that he had been incarcerated for a year and had not received his discovery. |
| **10 December 2014** | Mr. Davis is appointed by court order to represent Mr. Farook. |
| **15 July 2015** | Mr. Farook's case was calendared but not reached. |
| **13 February 2017** | Mr. Farook's case was calendared but not reached. |
| **5 July 2017** | Mr. Farook's case was calendared but not reached. Mr. Farook was indicted on more serious charges: two counts of second-degree murder and one count of attaining violent habitual felon status. Mr. David Bingham is appointed by court order to represent Mr. Farook. |
| **29 August 2017** | Mr. Farook's case was calendared but not reached. |
| **25 September 2017** | Mr. Sease was appointed by court order to represent Mr. Farook. |
| **26 September 2017** | Mr. Farook's case was calendared but not reached. |
| **8 January 2018** | Mr. Farook's case was calendared but not reached. |
| **17 March 2018** | Mr. Farook wrote to the clerk of court asking for |

"information (motions) concerning my t[rial] delay for the years of 2013, 2014, 2015, 2016, 2017 that the district attorney['s] office file[d] to delay my trial."

**10 September 2018**   Mr. Farook filed a pro se motion to dismiss alleging a Sixth Amendment violation.

**13 September 2018**   Mr. Sease filed a motion to dismiss alleging a Sixth Amendment violation.

¶ 12    A hearing on Mr. Farook's motion to dismiss was held on 24 September 2018. Mr. Farook's former attorney, Mr. Davis, testified against him as the State's sole witness. Importantly, Mr. Davis testified that it was his desire to delay the case once it became clear that Mr. Farook would possibly face a violent habitual felon indictment because in his experience delay would work to Mr. Farook's advantage. He also testified generally to the backlog of cases that beset the Rowan County courts at the time and explained that he told Mr. Farook sometime during his representation that it was unlikely he would be available to represent him at a trial because of his other professional obligations.

¶ 13    On the dismissal motion, the trial court acknowledged the over six-year delay in Mr. Farook's case, and that Mr. Farook remained in jail awaiting trial since the date he was arrested on 19 June 2012. However, in weighing the evidence offered by the State and Mr. Farook and considering it in light of the *Barker* factors, the trial court ultimately determined that Mr. Farook's Sixth Amendment right to a speedy trial was not violated, and the court denied his motion to dismiss on 8 October 2018.

That same day, Mr. Farook's trial began. Two days later, a jury found him guilty of one count of hit and run resulting in serious injury or death and two counts of second-degree murder. Mr. Farook entered into plea agreements for the remaining charges. The trial court sentenced Mr. Farook to two terms of life imprisonment without the possibility of parole, plus twenty-nine to forty-four months. He appealed his convictions.

## II.    Court of Appeals Decision

Mr. Farook argued before the Court of Appeals that the trial court erred in denying his motion to dismiss and in finding that his constitutional right to a speedy trial had not been violated under the four-factor balancing test described in *Barker*, 407 U.S. at 530. The four factors include the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id*. Mr. Farook asserted that the trial court erred in admitting as evidence against him privileged and confidential testimony from his former counsel, Mr. Davis, and that absent this evidence, the State could not carry its burden in explaining or excusing the over six-year delay in his case. According to Mr. Farook, the weight of the evidence as applied to each of the *Barker* factors tipped the scales in his favor and entitled him to relief from his convictions. *Farook*, 274 N.C. App. at 85.

A unanimous Court of Appeals held that Mr. Farook had been deprived of his right to a speedy trial, reversed the trial court's denial of his motion to dismiss, and

vacated his convictions. *Id.* at 88. The court undertook an analysis of each *Barker* factor in reasoning that he was entitled to relief. First, the court concluded that the six-year delay in the case was sufficient to create a presumption of prejudice to Mr. Farook to "trigger the *Barker* inquiry," thereby shifting the burden to the State to rebut the presumption and assign reasons for the delay. *Id.* at 76–77.

¶ 16        Second, the court concluded that the State failed to meet its burden in explaining the inordinate delay in the case. *Id.* at 87. It held that the trial court erred in allowing Mr. Davis to testify against Mr. Farook as the State's sole rebuttal witness concerning the reason for the delay. *Id.* at 84. In the court's view, Mr. Davis divulged privileged information, and Mr. Farook neither tacitly nor expressly waived the attorney-client privilege. *Id.* The court further reasoned that even if Mr. Davis's mental impressions, conclusions, opinions, and legal theories in connection with his defense of Mr. Farook were work product, those would nevertheless be similarly privileged and inadmissible as evidence. *Id.* The panel also acknowledged that neither the State nor the trial court made any attempt to limit Mr. Davis's testimony concerning the delay to public information such as court calendars or Mr. Davis's caseload and explained that even if Mr. Davis adopted a trial strategy of delay as the State alleged, Mr. Farook could not have acquiesced to such a strategy if it had not been communicated to him. *Id.* Having discounted all of Mr. Davis's testimony in evaluating the factual allegations raised at the hearing on defendant's motion to

dismiss, the Court of Appeals concluded that under the totality of circumstances, the trial court committed plain error when it admitted privileged testimony as competent rebuttal evidence and improperly relied on the testimony to support its ruling on the motion to dismiss. *Id.* at 84–85.

Third, the court addressed whether Mr. Farook sufficiently asserted his right to a speedy trial. It diverged from the trial court's finding that Mr. Farook did not appropriately assert his right to a speedy trial on the grounds that the trial court's analysis of this factor was improperly influenced by Mr. Davis's testimony. *Id.* at 87. In addition, the Court of Appeals noted that Mr. Farook otherwise requested information about his case and filed a pro se motion to dismiss during its pendency. *Id.* Finally, the Court of Appeals held that Mr. Farook was prejudiced by the undue delay in the case which impacted his ability to adequately prepare a defense to the charges against him. *Id.* at 87–88.

On 10 March 2021, we allowed the State's petition for discretionary review to consider whether the Court of Appeals correctly held that the trial court plainly erred in admitting privileged and confidential testimony from Mr. Davis and whether the Court of Appeals properly applied the *Barker* test in evaluating Mr. Farook's speedy trial claim.

### III. Standard of Review

This Court reviews decisions of the Court of Appeals for errors of law. N.C. R. App. P. 16(a); *State v. Melton*, 371 N.C. 750, 756 (2018). The denial of a motion to dismiss on speedy trial grounds presents a constitutional question of law subject to de novo review. *State v. Williams*, 362 N.C. 628, 632–33 (2008).

### IV. Analysis

**A. The trial court plainly erred when it admitted privileged testimony from Mr. Davis as evidence against Mr. Farook at the hearing on defendant's motion to dismiss.**

To prove a speedy trial violation, a criminal defendant must first show that the length of the delay in his case is so presumptively prejudicial that it warrants a full constitutional review of his claim under *Barker*. *State v. Farmer*, 376 N.C. 407, 415 (2020). The length of the delay is considered a triggering mechanism that either instigates or obviates the need to conduct the full *Barker* analysis. *See Barker*, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."). If the rest of the inquiry is triggered, the length of delay functions independently as a factor to be weighed alongside the remaining three factors. *Id.*; *see also State v. Spivey*, 357 N.C. 114, 119 (2003).

The length of delay is not per se determinative of whether a defendant has been deprived of his right to a speedy trial. *See State v. Webster*, 337 N.C. 674, 678

(1994). Although there is no specific duration that constitutes a delay of constitutional dimension, delays that exceed one year have been considered "presumptively prejudicial," signaling the point at which courts deem the delay unreasonable enough to trigger the *Barker* calculus. *See Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (recognizing that post-accusation delay is presumptively prejudicial at least as it approaches one year); *Webster*, 337 N.C. at 679 (delay of sixteen months triggered examination of other factors); *State v. Pippin*, 72 N.C. App. 387, 392 (1985) (delay of fourteen months prompted consideration of *Barker* factors); *State v. McCoy*, 303 N.C. 1, 12 (1981) (delay of eleven months was not presumptively prejudicial for a murder case). When the accused makes this showing, the burden of proof "to rebut and offer explanations for the delay" shifts to the State. *See State v. Wilkerson*, 257 N.C. App. 927, 930 (2018).

¶ 22     Here, the trial court failed to recognize the presumption of prejudice to Mr. Farook created by the over six-year delay in his case before undertaking its review of the other *Barker* factors. Mr. Farook was incarcerated for 2,302 days — six years and three months — without a trial. As we have routinely held, and as the Court of Appeals correctly noted, as a delay approaches one year, it is generally recognized as long enough to create a "prima facie showing that the delay was caused by the negligence of the prosecutor." *Wilkerson*, 257 N.C. App. at 930 (quoting *State v. Strickland*, 153 N.C. App. 581, 586 (2002)). Indeed, a delay of over six years is

"extraordinarily long," "striking," and "clearly [sufficient to] raise[ ] a presumption that defendant's constitutional right to a speedy trial may have been breached." *Farmer*, 376 N.C. at 414.

¶ 23        Our decision in *McCoy*, in which we held that an eleven-month delay was not presumptively prejudicial for *Barker* purposes, casts no shadow on our conclusion in this case. *See McCoy*, 303 N.C. at 12. The delay in this case far surpasses the eleven-month delay at issue in *McCoy*. Indeed, "the presumption that pretrial delay has prejudiced the accused intensifies over time." *Doggett*, 505 U.S. at 652. The over six-year delay in this case must therefore be considered unreasonable and presumptively prejudicial within the meaning of the Sixth Amendment and is clearly sufficient to shift the burden of proof to the State "to rebut and offer explanations for the delay." *See Wilkerson*, 257 N.C. App. at 930.

¶ 24        The only evidence presented by the State to rebut the presumption of the unreasonableness of the delay in this case was the challenged testimony offered by Mr. Farook's former attorney, Mr. Davis. The *Barker* Court explained that different weights should be assigned to various reasons for delay:

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered . . . . Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (footnote omitted).

¶ 25        Consistent with that explanation, *Barker* recognizes four categories of reasons for delay: (1) deliberate delay on the part of the State, (2) negligent delay, (3) valid delay, and (4) delay attributable to the defendant. 407 U.S. at 531. Although establishing a violation of the speedy trial right does not require proof of an improper prosecutorial motive, because the Sixth Amendment speedy trial guarantee is itself indicative that delay is often detrimental to the criminal defendant, deliberate delay is "weighted heavily" against the State. *Id.* Deliberate delay includes an "attempt to delay the trial in order to hamper the defense[,]" *id.* at 531, or "to gain some tactical advantage over [a defendant] or to harass them[,]" *id.* at 531 n.32 (quoting *United States v. Marion*, 404 U.S. 307, 325 (1971)); *see also Pollard v. United States*, 352 U.S. 354, 361 (1957).

¶ 26        A more neutral reason such as negligent delay or a valid administrative reason such as the complexity of the case or a congested court docket is weighted less heavily against the State than is a deliberate delay. *Barker*, 407 U.S. at 531. However, the fact that the State did not act maliciously in delaying the case does not absolve the State of its responsibility to bring a criminal defendant to trial within a reasonable period. *Id.* Appropriately, such neutral circumstances do not necessarily excuse delay and speedy trial claims nevertheless should be considered when there is a neutral reason for the delay, "since the ultimate responsibility for such circumstances must

rest with the government rather than with the defendant." *Id.*; *see also State v. Smith*, 289 N.C. 143, 148–49 (1976) (holding that an eleven-month delay caused by overcrowded court dockets and difficulty in locating witnesses was acceptable); *State v. Hughes*, 54 N.C. App. 117, 119 (1981) (holding that no speedy trial violation occurred when reason for delay was congested dockets and a policy of giving priority to jail cases).

¶ 27 A valid reason for delay, such as delay caused by difficulty in locating witnesses, serves to justify appropriate delay. *Barker*, 407 U.S. at 531. Finally, delays occasioned by acts of the defendant or on his or her behalf are heavily counted against the defendant and will generally defeat his or her speedy trial claim. *See Vermont v. Brillon*, 556 U.S. 81, 89, 94 (2009) (holding that delay caused by defendant's counsel is not attributable to the State and defendant's "deliberate attempt to disrupt proceedings" was weighted heavily against him); *see also State v. Groves*, 324 N.C. 360, 366 (1989) (holding that no speedy trial violation occurred when defendant repeatedly requested continuances); *State v. Tindall*, 294 N.C. 689, 695–96 (1978) (holding that no speedy trial violation occurred when the delay was caused largely by the defendant absconding from the jurisdiction and living under an assumed name); *Pippin*, 72 N.C. App. at 394 (holding that a speedy trial claim does not arise from delay attributable to defense counsel's requested plea negotiations).

¶ 28 The State asserted below, as it does before this Court, that the overlong delay

in this case was caused by Mr. Farook's repeated requests for changes in representation and his acquiescence to Mr. Davis's strategy of delay, both of which it argued must weigh against Mr. Farook in the balance. At the hearing on Mr. Farook's motion to dismiss, Mr. Davis testified that Mr. Farook faced new criminal charges after plea negotiations with the State had failed. The State asked Mr. Davis if he strategized to delay the case once it became clear Mr. Farook would possibly face a violent habitual felon indictment. Mr. Davis answered in the affirmative, avowing that in his experience, delay would work to Mr. Farook's advantage. Mr. Davis testified as follows:

> Q. Now, would you — would you — would it be fair to say that that was a strategic decision in delaying the case from that point based on the discussions of the violent habitual felon?
>
> A. Of course. It's sort of the nature of trial practice, and again, I teach trial practice. Early on, victims are angry, prosecutors are sometimes motivated. Cases almost always get worse for the State over time.
>
> Witnesses leave. Evidence gets lost. Officers retire. I've had — I've done a tremendous number of jury trials. Probably well in excess of a hundred.
>
> Many of them very serious trials, and one of the recurrent themes of jurors is, "Where were these witnesses? Why did the State wait so long?" It greatly diminishes the — the power of the State's case. So, yes, because there were no labs, because people were angry, because the prosecutor was very interested in going after Mr. Farook with the violent habitual felon, all of those dynamics were part of my trial strategy and letting things

cool down.

¶ 29        Mr. Davis also attempted to rationalize the delay in Mr. Farook's case through his general testimony about the burdened Rowan County court dockets. During cross-examination, he noted that while he was Mr. Farook's counsel, "at no time" had the case been on a trial calendar, only administrative calendars. Furthermore, Mr. Davis explained that he was under pressure to meet strict deadlines in one case, was "under the gun" with his normal caseload, and had "at least two pending pressing murders." Mr. Davis also emphasized that he told Mr. Farook to request new counsel owing to the prospect that he would be unavailable to represent Mr. Farook at trial "for a year or longer" because he "couldn't even consider [representing Mr. Farook at trial] for a long time." Indeed, Mr. Davis testified about his representation of Mr. Farook, his trial strategy, and the administrative difficulties that plagued the Rowan County courts. Each of these buckets of testimony is significant in analyzing whether Mr. Davis's testimony was improperly admitted. The testimony should have been excluded if it revealed information protected by the attorney-client privilege. *See Sims v. Charlotte Liberty Mut. Ins. Co.*, 257 N.C. 32, 36 (1962) (explaining that if evidence is held to be privileged it is therefore inadmissible).

¶ 30        "The attorney-client privilege is the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). The privilege functions for the public benefit by encouraging clients

to communicate with their attorneys freely and fully, fostering the provision of competent legal advice, facilitating the ends of justice, and outweighing the harm that may result from the loss of relevant information. Jack B. Weinstein & Margaret A. Berger, *Weinstein's Evidence Manual* § 18.03[1] (Joseph M. McLaughlin ed., Matthew Bender 2014). For the privilege to apply and thus require the exclusion of relevant evidence, "the relation of attorney and client [must have] existed at the time the [particular] communication was made." *In re Miller*, 357 N.C. 316, 335 (2003) (quoting *State v. McIntosh*, 336 N.C. 517, 523 (1994)).

¶ 31     However, the mere fact that an attorney-client relationship exists does not automatically trigger the attorney-client privilege: the communication sought to be shielded from publication must be confidential. *See Dobias v. White*, 240 N.C. 680, 684 (1954) (noting that simply because "the evidence relates to communications between attorney and client alone does not require its exclusion" because such communications must also be confidential); *see also McIntosh*, 336 N.C. at 523; *State v. McNeill*, 371 N.C. 198, 240 (2018). At common law, "confidential communications made to an attorney in his professional capacity by his client are privileged, and the attorney cannot be compelled to testify to them unless his client consents." *Dobias*, 240 N.C. at 684.

> A privilege exists if (1) the relation of attorney and client existed at the time the communication was made, (2) the communication was made in confidence, (3) the communication relates to a matter about which the

attorney is being professionally consulted, (4) the communication was made in the course of giving or seeking legal advice for a proper purpose although litigation need not be contemplated[,] and (5) the client has not waived the privilege.

*State v. Murvin*, 304 N.C. 523, 531 (1981). The party asserting the privilege has the burden of establishing each of the essential elements of the privileged communication. *Id.* at 532.

### 1. *Standard of review for unpreserved evidentiary errors*

¶ 32    Mr. Davis did not assert the attorney-client privilege or work-product privilege at the hearing on his speedy trial motion. And despite being represented by Mr. Sease at the hearing, there was no objection made on Mr. Farook's behalf to any of Mr. Davis's testimony. Unpreserved evidentiary errors are reviewed by this Court for plain error. *See State v. Lawrence*, 365 N.C. 506, 516 (2012) ("[T]he North Carolina plain error standard of review applies only when the alleged error is unpreserved, and it requires the defendant to bear the heavier burden of showing that the error rises to the level of plain error."). To demonstrate plain error, Mr. Farook must also "establish . . . that, after examination of the entire record," the error had a probable impact on the trial court's decision to deny Mr. Farook's motion to dismiss. *Lawrence*, 365 N.C. at 518 (holding that plain error requires defendant to show the error had a probable impact on the jury's finding that defendant was guilty).

### 2. *The testimonial evidence contained information that was protected by the attorney-client privilege.*

¶ 33     We hold that under *Murvin*, the Court of Appeals correctly decided that the attorney-client privilege attached to Mr. Davis's testimony concerning his representation of Mr. Farook, which included both the testimony about his decision to engage in delay and any communications Mr. Davis had with Mr. Farook regarding his decision that flowed therefrom.

¶ 34     First, the attorney-client relationship existed between Mr. Davis and Mr. Farook. Second, all such communications between Mr. Davis and Mr. Farook were made in confidence. Nowhere in the transcript of Mr. Davis's testimony did Mr. Davis indicate that he communicated his delay strategy in the presence of anyone other than Mr. Farook either directly or indirectly through other attorneys from his office who, acting as Mr. Davis's agents, met with Mr. Farook when Mr. Davis was busy. Specifically, Mr. Davis testified that he sent these attorneys "to routinely make contact with [Mr. Farook]" when he was preoccupied with his other duties as an attorney. It is beyond dispute that the attorney-client privilege also extends to an attorney's agents. *See Murvin*, 304 N.C. at 531 ("Communications between attorney and client generally are not privileged when made in the presence of a third person who is not an agent of either party."). Necessarily, then, the communications at issue related to a matter about which Mr. Davis was professionally consulted and were made in the course of giving Mr. Farook legal advice for a proper purpose.

¶ 35        The State emphasizes the last element under the *Murvin* test, namely, that the attorney-client privilege was waived. According to the State, assuming its existence, Mr. Farook waived the attorney-client privilege by filing his speedy trial motion. However, as the Court of Appeals explained, to demonstrate that Mr. Farook went along with Mr. Davis's trial strategy, and thus that Mr. Farook was the cause of the delay, the State relied upon privileged communications between Mr. Farook and his attorney. The State has failed to demonstrate any exception that would allow the admission of testimony containing such privileged information absent a waiver.

¶ 36        The dissent insists that Mr. Farook waived the protections afforded by the attorney-client privilege concerning Mr. Davis's trial strategy testimony when, in Mr. Farook's pro se motion alleging that Mr. Davis rendered IAC, Mr. Farook asserted that he never agreed to a strategic delay of his trial. In the dissent's view, this declaration in Mr. Farook's IAC motion waived any privilege that may have otherwise applied to Mr. Davis's trial strategy testimony because (1) the declaration constituted a third-party disclosure which was relevant to Mr. Davis's representation of Mr. Farook and (2) it was a declaration Mr. Davis had the authority to respond to under Rule 1.6(b) of the North Carolina Rules of Professional Conduct. The dissent further contends that pursuant to N.C.G.S. § 15A-1415(e), such a waiver of the attorney-client privilege was automatic upon the filing of Mr. Farook's IAC motion, and that being so, the trial court was not required to acknowledge the waiver of attorney-client

privilege nor preclude Mr. Davis from testifying to information that was no longer protected by the privilege. This argument ignores long-standing precedent of this Court which establishes that it is proper, as happened here, for a trial court to disregard motions filed pro se by represented defendants. *See, e.g., State v. Williams*, 363 N.C. 689, 700 (2009) ("Having elected for representation by appointed defense counsel, defendant cannot also file motions on his own behalf. … Defendant was not entitled to file pro se motions while represented by counsel.") (quoting *State v. Grooms*, 353 N.C. 50, 61 (2000) (citations omitted), *cert. denied*, 534 U.S. 838, 122 S. Ct. 93, 151 L. Ed. 2d 54 (2001). Moreover, the argument also rests on a misinterpretation and misapplication of the statute governing IAC claims.

¶ 37    At the outset, it should be noted that the State did not make this argument before the trial court, the Court of Appeals, or this Court. It has been the rule in this Court, at least since 1934, that "[a] party has no right to appear both by himself and by counsel. Nor should he be permitted ex gratia to do so." *Abernethy v. Burns*, 206 N.C. 370, 370-71 (1934). As we said in *State v. Parton,* "[i]t has long been established in this jurisdiction that a party has the right to appear in propria persona or, in the alternative, by counsel. There is no right to appear both in propria persona and by counsel." *State v. Parton*, 303 N.C. 55, 61 (1981). In *State v. Williams,* this principle was the basis for our holding that it was impermissible for the defendant in that case, who was represented by court-appointed counsel, to file a pro se motion to dismiss on

speedy trial grounds. *State v. Williams*, 363 N.C. at 700 ("Defendant was represented by appointed counsel and was not allowed to file pro se motions on his behalf.") In this case, Mr. Farook was represented by counsel and was not allowed to file pro se motions. Therefore, such a legal nullity cannot be the basis of any sort of waiver of the attorney-client privilege in these circumstances.

¶ 38    Indeed, the notion that Mr. Farook waived his privilege here is contrary to the statute governing IAC claims.

¶ 39    Subsection 15A-1415(e) provides that the filing of a motion for IAC

> waive[s] the attorney-client privilege with respect to both oral and written communications between such counsel and the defendant to the extent the defendant's prior counsel reasonably believes such communications are necessary to defend against the allegations of ineffectiveness. This waiver of the attorney-client privilege shall be automatic upon the filing of the motion for appropriate relief alleging ineffective assistance of prior counsel, and the superior court need not enter an order waiving the privilege.

N.C.G.S. § 15A-1415(e) (2021). As with all statutes, in interpreting N.C.G.S. § 15A-1415(e) we must look to the intent of the legislature, *State v. Tew*, 326 N.C. 732, 738 (1990), and give meaning to all its provisions. *State v. Bates*, 348 N.C. 29, 35 (1998). "Individual expressions must be construed as a part of the composite whole and be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit." *Tew*, 326 N.C. at 739.

¶ 40    While under N.C.G.S. § 15A-1415(e) the waiver of the attorney-client privilege

is automatic upon the filing of a motion alleging IAC with respect to certain information, the statute also provides that the automatically waived communications between a defendant and his attorney are only waived "*to the extent the defendant's prior counsel reasonably believes such communications are necessary to defend against the allegations of ineffectiveness.*" N.C.G.S. § 15A-1415(e) (emphasis added). Thus, the italicized clause is a limitation on the context within which the automatic waiver relating to IAC filings is operative. The waiver of certain information has force only to the extent that the information is disclosed when a defendant's attorney "reasonably believes" such disclosure is "necessary to defend against the allegations of ineffectiveness." *See* N.C.G.S. § 15A-1415(e).

¶ 41 The fact that by statute the waiver is deemed automatic upon the filing of a motion alleging an IAC claim does not mean that the scope of the waiver knows no bounds. On the contrary, the statute's use of the "to the extent" expression places a statutory limit on the contexts in which the waived information is available for disclosure. Moreover, the statute contains no express provision for expanding the scope of the waiver beyond the context of the IAC claim. *See also, State v. Buckner,* 351 N.C. 401 (2000) (holding that N.C.G.S. § 15A-1415(e) permitted only the discovery of privileged information relevant to the specific IAC claim being litigated).

¶ 42 In this case, Mr. Farook's pro se IAC filing was a legal nullity and never litigated. Consistent with the limiting language in N.C.G.S. § 15A-1415(e), such

information, even if waived, was only admissible *to defend against* Mr. Farook's claim of ineffective representation, which necessarily requires that the IAC claim be properly before the trial court. However, it was not.

¶ 43        While the objective and subjective mental processes of Mr. Davis and his communications with Mr. Farook regarding a strategic decision to delay his case may be relevant to the effectiveness of Mr. Davis's representation, pursuant to N.C.G.S. § 15A-1415(e) such information must also be reasonably *necessary in defending* against an IAC claim. Privileged materials are not subject to the automatic waiver if: (1) they do not concern any matter contested in the IAC proceeding or (2) there is no IAC claim being litigated. Furthermore, N.C.G.S. § 15A-1415(e) cannot be read to imply a waiver of the attorney-client privilege upon the filing of a speedy trial motion, nor can a defendant be required to forfeit one constitutional right as a condition of asserting another. *State v. White*, 340 N.C. 264, 274 (1995) ("A defendant cannot be required to surrender one constitutional right in order to assert another." (citing *Simmons v. United States*, 390 U.S. 377, 394 (1968))); *see also State v. Diaz*, 372 N.C. 493, 500 (2019).

¶ 44        In addition, while Mr. Davis's testimony concerning trial strategy was inadmissible as evidence, the testimony regarding his professional obligations and the backlog of cases that plagued the Rowan County courts was admissible, non-privileged testimony about which Mr. Davis had personal knowledge. Nevertheless,

the trial court's order indicates that Mr. Farook's motion to dismiss was denied based in part on the court's reliance on *all* of Mr. Davis's testimony. We therefore leave it to the trial court on remand to reweigh this admissible evidence independently.

The State alternatively contends that Mr. Farook acquiesced to the delay because of his requests for changes in representation. However, even if changes to Mr. Farook's counsel prolonged the pendency of this case, it may be of no constitutional significance if those changes were warranted and necessary. For example, if Mr. Bingham — Mr. Farook's third attorney in the case — withdrew from his role as Mr. Farook's counsel because he had a conflict of interest, any delay that resulted from his withdrawal was warranted and should not be attributable to, nor held against, Mr. Farook. Additionally, any delay that could be imputed to Mr. Farook because of his requests for changes in counsel would only explain part of the delay in a case that spanned over six years — a case that remained pending because the State did not call the case for trial when it had the opportunity to do so on at least *nine* separate occasions over the years. The trial court acknowledged that Mr. Bingham "was almost immediately appointed" when Mr. Farook sought substitute counsel in 2017, but the court did not explain whether the change in counsel in 2017 weighed against Mr. Farook when it decided the State did not intentionally delay the case. On remand, the trial court can evaluate what weight, if any, should be given to this fact in assigning responsibility for the delay in this case.

¶ 46        Lastly, the State argues that the Court of Appeals improperly expanded the

scope of the attorney-client privilege. However, the Court of Appeals acknowledged

that if Mr. Davis's testimony regarding court calendars in Rowan County and his

other obligations as an attorney was not privileged, the trial court could have limited

his testimony to this non-privileged information. *Farook*, 274 N.C. App. at 84.

Additionally, the State could have presented testimony from the clerk of court or a

prosecutor regarding the court's docket and its explanation for the failure to call Mr.

Farook's case for trial. *Id.* at 78. For whatever reason, the trial court and the State

did neither.

¶ 47        Applying the *Murvin* test to the facts of this case, Mr. Farook has established

that the trial court's erroneous admission of privileged testimony was plain error. The

trial court relied on Mr. Davis's testimony in weighing the reason-for-delay factor

against Mr. Farook and in favor of the State.[2] The court summed up the reasons for

the delay as administrative encumbrances such as "the extensive backlog in Superior

Court cases." Further, the court found that the State had taken no actions to

deliberately delay the trial, had not been negligent in bringing the case to trial, and

---

[2] To the extent that the dissent is contending that privileged information concerning conversations between Mr. Farook and his attorney is discoverable and admissible because otherwise, the State would have difficulties proving that defense counsel had an impermissible strategy of delay, that argument would virtually eliminate the privilege. It simply cannot be correct that because the attorney-client privilege makes it difficult to show delay, the privilege can be abandoned. Such a rule would allow the State to call defense counsel to testify about what the defendant said about the underlying facts of the case, any time such testimony would make the State's case easier to prove.

that Mr. Farook contributed to the delay through acquiescence. Because Mr. Davis was the State's only witness from which this evidence was drawn out, then necessarily, these conclusions can only be based on his testimony. Thus, the erroneous admission of this evidence, and the trial court's reliance thereon, "seriously affect[ed] the fairness [and] integrity" of the judicial proceeding and had a probable impact on its decision to deny the motion to dismiss. *Lawrence*, 365 N.C at 515 (first alteration in original) (quoting *United States v. Atkinson*, 297 U.S. 157, 160 (1936)).

¶ 48        The trial court's conclusion, in conjunction with the weight it accorded to the other factors, resulted in the denial of Mr. Farook's speedy trial claim. We therefore hold that the trial court plainly erred in allowing Mr. Davis to testify to privileged communications and confidential trial strategy. On remand, the court is free to consider any other competent evidence the State may offer relevant to the reasons for the delay of the trial in this case. And having found that sufficient time elapsed between Mr. Farook's arrest and his trial, and thus that the *Barker* test is implicated, on remand the trial court must also independently weigh the length of the delay among the other factors. The longer the delay, the more heavily this factor weighs against the State. *See Farmer*, 376 N.C. at 414, 416 (holding that a delay of five years, two months, and twenty-four days was extraordinarily long and weighed against the State); *Doggett*, 505 U.S. at 657–58 (holding that a delay of more than eight years required relief).

**B. Under the *Barker* test, the trial court misapplied the proper standard for evaluating prejudice to defendant resulting from the delay.**

¶ 49    To assess whether the defendant has suffered prejudice from the delay in bringing his case to trial, courts should analyze three interests identified by the *Barker* Court that are affected by an unreasonable delay: (1) oppressive pretrial incarceration; (2) the social, financial, and emotional strain and anxiety to the accused of living under a cloud of suspicion; and (3) impairment of the ability to mount a defense to the charges pending against the defendant. *Barker*, 407 U.S. at 532; *see also Webster*, 337 N.C. at 680–81; *Farmer*, 376 N.C. at 418 (stating that the possibility that the defense will be impaired is the most serious component of *Barker* prejudice). The United States Supreme Court warned in *Barker* that none of the four factors in the balancing scheme are "either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial," and further, that because these factors "have no talismanic qualities," they must be considered together with the relevant circumstances set forth in each case. *Barker*, 407 U.S. at 533.

¶ 50    Later, vacating a decision concluding that a showing of actual prejudice is essential, the United States Supreme Court held that this language from *Barker* "expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." *Moore v. Arizona*, 414 U.S. 25, 26 (1973) (per curiam). In a similar fashion, the Court recognized in *Doggett* that when the delay is inordinate and undue it may be

impossible for the defendant to produce evidence of demonstrable prejudice "since excessive delay can compromise a trial's reliability in unidentifiable ways." *Doggett*, 505 U.S. at 648. As a result, the Court recognized in *Doggett* that a lengthy delay coupled with the absence of any rebuttal to the presumption of prejudice created by that delay should result in a finding of prejudice. *Id.* at 658. In *Doggett*, the government protested that the defendant failed to make an affirmative showing that the delay in the case impaired his ability to defend against the charges against him. *Id.* at 655. Though the Court agreed that the defendant did not make such a showing, it recognized that this argument did not settle the issue. *Id.* at 655–56. Instead, the Court emphasized that actual and particularized prejudice to the defendant is not essential to every speedy trial claim. *Id.* at 655.

¶ 51     *Barker* and its progeny make clear that one of the purposes of the speedy trial guarantee is to protect against those forms of prejudice that are so axiomatic as to require no affirmative proof. *Doggett*, 505 U.S. at 655. The failure to show actual prejudice to the defense is not fatal per se to a speedy trial claim. Thus, "presumptive prejudice" along with the fact that the other factors are found to tip the scales in a defendant's favor may be enough to require dismissal of the charges, especially when there is no justification presented by the government. *See id.* (declaring the defendant had done enough to secure dismissal on speedy trial grounds, recognizing that "excessive delay presumptively compromises the reliability of a trial in ways that

neither party can prove or, for that matter, identify"). And as the Court clarifies in *Doggett*, a criminal defendant may establish prejudice for purposes of his speedy trial claim through proof of either actual prejudice or presumptive prejudice. *Id.*

¶ 52    In this case, the trial court misapplied the standard for assessing prejudice in two ways. The trial court first erred in finding that "the State has been significantly prejudiced by the length of the delay." So finding, the trial court misapprehended the *Barker* requirement and improperly identified the State, rather than Mr. Farook, as the prejudiced party. That requirement was, in the trial court's view, met by the prejudice suffered by the State from the six-year delay in bringing the case to trial. In fact, the State has the calendaring authority to set a case for trial. *See Farmer*, 376 N.C. at 412 (demonstrating that the State retains the authority and ability to calendar a case for trial through an acknowledgement that within four months of the *Farmer* defendant's assertion of his right to a speedy trial, his case was calendared and tried); N.C.G.S. § 7A-49.4(a) (2021) (stating that criminal cases in superior court shall be calendared by the district attorney). Furthermore, the Sixth Amendment right to a speedy trial is a right granted to the defendant. *See* U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial . . . ."). The speedy trial guarantee is a constitutionally granted shield against unreasonably sluggish prosecutorial conduct that is oppressive to the defendant and hostile to the fair administration of justice.

¶ 53        Second, the trial court erred in concluding that the prejudice factor weighed decisively against Mr. Farook because he did not prove actual prejudice. As we have emphasized, the trial court may not find that a criminal defendant's speedy trial claim is doomed merely because he does not demonstrate actual prejudice. On remand, the trial court should assess the extent to which Mr. Farook was prejudiced by the delay in this case under the proper standard articulated herein.

## V.  Conclusion

¶ 54        In *Beavers v. Haubert*, the United States Supreme Court emphasized that a reviewing court's scrutiny of a speedy trial claim depends not on a bright-line rule but is governed by the context and factual circumstances particular to each individual defendant's case. 198 U.S. 77, 87 (1905); *see also Barker*, 407 U.S. at 522. The ad hoc considerations prescribed in *Beavers* reflected the Court's sensitivity to balancing the competing interests of the government and the criminal defendant. No single *Barker* factor is, in itself, either necessary or sufficient to find a violation of the speedy trial right; instead, "they are related factors and must be considered together with such other circumstances as may be relevant." *Barker*, 407 U.S. at 533; *see also Spivey*, 357 N.C. at 118. The *Beavers* Court explained: "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *Beavers*, 198 U.S. at 87; *see also State v. Neas*, 278 N.C. 506 (1971). In reviewing speedy trial

claims, trial courts must be sensitive to the interests of the State and the defendant, with an eye toward fairness as the *Barker* test compels.

¶ 55        For the reasons set forth above, we remand this case to the Court of Appeals for further remand to the trial court. On remand, the trial court should consider any competent, non-privileged evidence of the reason for the delay in this case. It also must assess the extent to which Mr. Farook asserted his speedy trial right and the extent to which he was prejudiced by the delay in light of the proper standard by which such prejudice is to be determined. Finally, the trial court may receive additional evidence by both parties to establish the necessary quantum of proof on each *Barker* factor to be weighed to determine whether Mr. Farook's Sixth Amendment speedy trial right was abridged such that his motion to dismiss should be granted and his convictions vacated.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Justice BERGER dissenting.

By improperly removing the burden of proof from defendant and placing it squarely on the shoulders of the State, the majority effectively holds that the mere passage of time entitles a defendant to relief on a motion to dismiss for a purported speedy trial violation. In addition, the majority eliminates the requirement under *Barker* that a defendant demonstrate prejudice caused by the delay. Finally, the majority offers the shelter of privilege to defense counsel's testimony despite the waiver of such privilege by defendant himself. Because defendant waived the attorney-client privilege, failed to prove that delay was attributable to the State, and failed to show prejudice, I respectfully dissent.

On June 17, 2012, defendant killed Tommy and Suzette Jones when defendant crossed the centerline of the road in his vehicle and collided with the couple's motorcycle. A witness to the collision testified that defendant stepped out of his vehicle following the crash, observed the bodies of Mr. and Mrs. Jones, and fled the scene on foot. Defendant was later charged with two counts of felony death by vehicle, felony hit and run resulting in death, driving while impaired, reckless driving to endanger, driving left of center, driving with a revoked license, and resisting a public officer.[1]

---

[1] Defendant was subsequently indicted on two counts of second-degree murder and attaining violent habitual felon status.

¶ 58        Defendant was represented by four different attorneys prior to filing his motion to dismiss for an alleged speedy trial violation in September 2018. Defendant's first attorney, James Randolph, was appointed in July 2012 following defendant's arrest. Soon after, however, on August 6, 2012, Mr. Randolph withdrew as defendant's counsel upon realizing that other members of his law firm were working with the family of the victims.

¶ 59        James Davis, defendant's second attorney, was appointed on or about August 27, 2012. While the majority notes that Mr. Davis was not appointed until December 2014 in its analysis, this date merely reflects when an administrative order of assignment was entered, and use of this date by the majority is contrary to the information in the record. Defendant stated in a pro se motion to dismiss for ineffective assistance of counsel that Mr. Davis was appointed on August 28, 2012. Mr. Davis testified that he was appointed "on or about August 27, 2012" and included this date in his written motion to withdraw. Further, evidence in the record indicates that Mr. Davis received discovery for defendant's case in December 2012 and engaged in discussions with the State regarding defendant's pending violent habitual felon indictment as early as March 2013. An honest review of the record leads to use of the August 27, 2012 date as the date Mr. Davis was appointed as defense counsel. This obviously impacts the majority's characterization of the delay attributable to counsel for defendant. While the majority acknowledges in a footnote that there is "some

evidence in the record tending to suggest that Mr. Davis began representing Mr. Farook in 2012," the majority nonetheless characterizes the delay attributable to defendant as three years. In reality, delay attributable to Mr. Davis alone was closer to five years.

¶ 60        Mr. Davis entered into plea negotiations with the State; however, he filed a motion to withdraw as defendant's counsel on June 30, 2017, after defendant rejected a plea offer from the State. In other words, when Mr. Davis understood that defendant's case would proceed to trial instead of being resolved through a plea, he sought to withdraw from representation.

¶ 61        In acknowledging this was "a very important case" given it involved a violent habitual felon indictment, Mr. Davis testified that his workload would not allow him to adequately prepare for defendant's trial. Mr. Davis indicated that he could not be prepared for trial until summer 2018, even though the State wanted to calendar the case for trial in 2017. Mr. Davis was permitted to withdraw, and David Bingham was appointed as defendant's third attorney on July 5, 2017. The case was placed on an administrative calendar for August 7, 2017.

¶ 62        On September 11, 2017, defendant filed a pro se "Motion to Dismiss Appointed Attorney" requesting Mr. Bingham be dismissed as defendant's counsel.[2] According

---

[2] There is also a letter in the record from defendant to Mr. Bingham dated August 2, 2017. It is unclear if this letter was sent to the clerk's office or directly to Mr. Bingham. In the letter, defendant informs Mr. Bingham that he wants Mr. Bingham to withdraw from the

to defendant, Mr. Bingham was not looking after defendant's best interests and had informed defendant that he would "be found guilty of all charges."

¶ 63      On September 14, 2017, Mr. Bingham filed a motion requesting that the trial court appoint a private investigator to interview witnesses and to "help [defendant] locate and establish alibi witnesses."  There is no indication in the record that any other attorney appointed to represent defendant on these charges had applied for assistance in investigating defendant's case.  On September 13, 2017, Mr. Bingham filed a motion to withdraw as counsel for defendant.  The trial court entered an order granting Mr. Bingham's motion on September 25, 2017.

¶ 64      On that same day, Chris Sease was assigned as the fourth appointed attorney to represent defendant in this case.  Between August 2012 and the time Mr. Sease was appointed, defendant's case was calendared but not reached at least eight times. In further examining this time period, the trial court found that from the time defendant killed Mr. and Mrs. Jones until June 2016, there was "an extensive backlog in Superior Court cases" in Rowan County and "the State [had] tried mostly cases older than [d]efendant's."[3]

---

case and provides Mr. Bingham with a list of three attorneys he would prefer to have appointed to represent him.

[3] This Court recently found that there was no speedy trial violation in another case from Rowan County during this same time period.  In *State v. Farmer*, 376 N.C. 407, 412, 852 S.E.2d 334, 339 (2020), Justice Morgan, writing for the majority, weighed the *Barker* factors, including "crowded criminal case dockets," and determined that a delay of five years from 2012 to 2017 of the trial of the defendant's sexual abuse charges did not violate the defendant's constitutional right to a speedy trial.

¶ 65        Despite representation by Mr. Sease, defendant filed a pro se motion on September 4, 2018, alleging ineffective assistance of counsel and seeking dismissal of the charges against him.  The motion stated that Mr. Davis did not speak with or visit defendant in jail for more than four-and-a-half years, from August 2012 until March 2017.  Defendant further alleged that the delay by Mr. Davis resulted in prejudice to defendant, and defendant claimed to have "never agreed to the delay of his trial."

¶ 66        On September 13, 2018, defendant filed another pro se motion to dismiss, this time alleging a speedy trial violation and ineffective assistance of counsel.  Defendant again alleged Mr. Davis did not speak with him about his case for more than four-and-a-half years and that Mr. Bingham informed defendant that he would be found guilty.

¶ 67        Mr. Sease filed a motion to dismiss for a speedy trial violation on September 18, 2018, and alleged the following:

> 8.      That the [d]efendant entered a plea of [n]ot [g]uilty . . . in Superior Court on August 13, 2012.
>
> 9.      That the [d]efendant's case was not calendared again until the week of February 18, 2013, almost six months later. Said case was not reached. . . .
>
> 10.      That the [d]efendant's case was not calendared for trial again until the week of March 19, 2013. Said case was not reached. . . .

11. That the [d]efendant's case was not calendared for trial again until the week of April 16, 2013. . . .

12. That the [d]efendant's case was not calendared again until July 15, 2015, almost 27 months later. Said case was not reached. . . .

13. That the [d]efendant's case was not calendared again until July 27, 2015. Said case was not reached. . . .

14. That the [d]efendant's case was not calendared again until February 13, 2017, almost 19 months later. Said case was not reached. . . .

. . . .

16. That [d]efendant's case was calendared for the week of July 5, 2017. Said case was not reached. . . .

17. That the [d]efendant's case was not calendared again until August 29, 2017. Said case was not reached. . . .

18. That the [d]efendant's case was not calendared again until September 26, 2017. Said case was not reached. . . .

18. [sic] That the case was not calendared until January 8, 2018. Said case was not reached for trial.

¶ 68 Defendant offered no further evidence in support of his contention that his right to a speedy trial had been violated by the State. While defendant's motion does not state the reason defendant's case was not reached on each date, his case was "calendared for trial" at least twice during Mr. Davis's representation. In a section

of the order denying defendant's motion to dismiss entitled "Timeline," the trial court stated that "[Mr.] Davis tried approximately 18 jury trials in Rowan County criminal superior [court] between 2013 and 2017 along with countless criminal and civil district court trials. Additionally, during the time [Mr.] Davis represented [d]efendant[,] he represented 7 other defendant[s] charged with first degree murder, some of which are still pending."

¶ 69        Defendant argues, and the majority agrees with the Court of Appeals, that the testimony provided by Mr. Davis, a very experienced trial attorney, disclosed information protected by attorney-client privilege. Additionally, the majority holds that the trial court erred in its application of the *Barker* factors. Both determinations are contrary to existing law.

## I.  Attorney-Client Privilege

¶ 70        "It is well settled that communications between an attorney and a client are privileged under proper circumstances." *State v. Bronson*, 333 N.C. 67, 76, 423 S.E.2d 772, 777 (1992). In accordance with this privilege, the protection is extended "not only [to] the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." *Upjohn Co. v. United States*, 449 U.S. 383, 390, 101 S. Ct. 677, 683, 66 L. Ed. 2d 584, 592 (1981). Nevertheless, "the mere fact the evidence relates to communications between attorney and client alone does not require its exclusion." *Dobias v. White*,

STATE V. FAROOK

2022-NCSC-59

*Berger, J., dissenting*

240 N.C. 680, 684, 83 S.E.2d 785, 788 (1954). Courts are obligated to strictly construe the attorney-client privilege and limit it to the purpose for which it exists. *State v. Smith*, 138 N.C. 700, 703, 50 S.E. 859, 860 (1905).

¶ 71        Because the privilege is a protection belonging to the defendant, it may be waived by him at any time. *See State v. Tate*, 294 N.C. 189, 193, 239 S.E.2d 821, 825 (1978). For example, a defendant's decision to disclose the substance of communications that would otherwise be privileged to a third party waives confidentiality. *See State v. Fair*, 354 N.C. 131, 168, 557 S.E.2d 500, 525–26 (2001) (finding waiver of attorney-client privilege where defendant presented the substance of the communication to the jury as part of his defense). The rationale behind this type of waiver is indeed a logical one: once a party makes a third-party disclosure, thereby sharing privileged information with someone other than their attorney, the purpose of keeping such information confidential is no longer implicated.

¶ 72        In addition, waiver of the privilege may occur in the context of claims involving the quality of an attorney's representation of a criminal defendant. N.C.G.S. § 15A-1415(e) (2021); *see also* N.C. R. Prof'l Conduct r. 1.6(b) (N.C. State Bar 2017) (authorizing attorneys "to respond to allegations in *any* proceeding concerning the lawyer's representation of the client[.]" (emphasis added)). Subsection 15A-1415(e) provides that the filing of a motion for ineffective assistance of counsel

> waive[s] the attorney-client privilege with respect to both
> oral and written communications between such counsel

and the defendant to the extent the defendant's prior counsel reasonably believes such communications are necessary to defend against the allegations of ineffectiveness. This *waiver of the attorney-client privilege shall be automatic upon the filing* of the motion for appropriate relief alleging ineffective assistance of prior counsel, and the superior court need not enter an order waiving the privilege.

N.C.G.S. § 15A-1415(e) (2021) (emphasis added); *see also State v. Buckner*, 351 N.C. 401, 406, 527 S.E.2d 307, 310 (2000) ("[W]aiver of the attorney/client privilege [is] automatic upon the filing of the allegations of ineffective assistance of counsel . . . ."). However, the waiver is limited "to matters relevant to his allegations of ineffective assistance of counsel." *State v. Taylor*, 327 N.C. 147, 152, 393 S.E.2d 801, 805 (1990).

¶ 73      In addressing the State's argument that defendant waived any privilege that might have applied to defense counsel's testimony, the majority here notes that in order to demonstrate defendant "went along with Mr. Davis's trial strategy" of delay, "the State relied upon privileged communications between [defendant] and his attorney." The majority goes on to say that because "[t]he State has failed to demonstrate any exception that would allow admission" of such testimony, the testimony of Mr. Davis is protected. In using this circular reasoning, however, the majority discounts the ineffective assistance of counsel claim filed by defendant and the contents thereof. Moreover, the majority declines to address the fact that defendant failed to object to Mr. Davis's testimony. To the contrary, defendant cross-

examined Mr. Davis regarding information which defendant now claims is subject to the attorney-client privilege.

¶ 74        It is uncontested that defendant was in custody for an extended period of time while awaiting trial for killing Mr. and Mrs. Jones.  Defendant filed an ineffective assistance of counsel claim alleging the existence of a dilatory strategy that, according to defendant, was unilaterally developed by Mr. Davis.  In filing this claim against his previous attorney, defendant launched serious allegations concerning Mr. Davis and the quality of his representation that, based on the majority opinion, may have violated the Rules of Professional Conduct.  Defendant's ineffective assistance of counsel claim contained specific allegations of ineffective representation and a voluntary disclosure of privileged information, both of which result in a waiver of the attorney-client privilege.

¶ 75        Defendant's September 4, 2018, ineffective assistance of counsel claim specifically addressed Mr. Davis's strategy in delaying trial to receive a more favorable outcome for defendant.  Defendant alleged that his defense counsel "never instructed on speedy trial, or delay o[f] . . . defendant['s] trial[,]" and thus defendant "never agreed to the delay of his trial."  The mere filing of this document waived the attorney-client privilege.  N.C.G.S. § 15A-1415(e); *see also Buckner*, 351 N.C. at 406, 527 S.E.2d at 310.  To be clear, and as the majority correctly notes, waiver is necessarily limited "to matters relevant to his allegations of ineffective assistance of

counsel." *Taylor*, 327 N.C. at 152, 393 S.E.2d at 805. Defendant thus forfeited confidentiality with respect to the apparent five-year delay strategy employed by Mr. Davis. Mr. Davis's testimony during the hearing was directly related to this allegation. Defendant did not object to this testimony, and the trial court was not otherwise required to acknowledge or address the waiver of the attorney-client privilege. *See* N.C.G.S. § 15A-1415(e) (a trial court "need not enter an order waiving the privilege.").

¶ 76      In addition, N.C.G.S. § 15A-1415(e) does not expressly limit the context in which an attorney may address allegations of ineffectiveness, only that "prior counsel reasonably believes [disclosure is] necessary to defend against the allegations of ineffectiveness." N.C.G.S. § 15A-1415(e).

¶ 77      The speedy trial issue is directly related to defendant's claim of ineffective assistance of counsel. Filed only days before the speedy trial hearing, defendant's own pro se motion to dismiss based on a "lack of speedy trial" focused on the alleged inaction by Mr. Davis. Similarly, the motion to dismiss based on a speedy trial violation filed by defendant's counsel discussed the appointment of defendant's various attorneys and the lapse of time leading up to trial. Mr. Davis merely provided an explanation countering the allegations against him and his representation when he testified at the hearing. Mr. Davis obviously believed disclosure was necessary to defend against defendant's assertions of gross violations of the Rules of Professional

Conduct, and the nexus between the limited testimony of Mr. Davis and the speedy trial motions is far from the majority's characterization of a "waiver [that] knows no bounds."

¶ 78      The majority holds that the State may be in violation of defendant's right to a speedy trial, not because of any action (or inaction) shown on the part of the State, but rather because the State cannot access evidence relating to defense counsel's strategy of delay.  Delay in criminal cases is a common strategy.  As Mr. Davis testified, delaying disposition of criminal cases is the "nature of trial practice," and it is in no way unique to this defendant.  *See Vermont v. Brillon*, 556 U.S. 81, 90, 129 S. Ct. 1283, 1290, 173 L. Ed. 2d 231, 240 (2009) (acknowledging "the reality that defendants may have incentives to employ a delay as a 'defense tactic,' " as such a delay may " 'work to the accused's advantage' because 'witnesses may become unavailable or their memories may fade' over time."  (quoting *Barker v. Wingo*, 407 U.S. 514, 521, 92 S. Ct. 2182, 2187, 33 L. Ed. 2d 101, 111 (1972)).  Under the majority's theory, a defendant could initially consent to a delay for strategic purposes, subsequently file a motion to dismiss for a speedy trial violation, and later preclude counsel's testimony concerning the delay strategy on the basis of the attorney-client privilege.  We should be particularly concerned with determining whether such an approach was employed by defendant or defense counsel, especially in light of the fact

that "[d]ilatory practices bring the administration of justice into disrepute." N.C. R. Prof'l Conduct r. 3.2, cmt. 1.

In addition to waiver under N.C.G.S. § 15A-1415(e), the privilege between attorney and client evaporates the moment such privileged communications are shared beyond that relationship. Based on the record here, defendant voluntarily disclosed to the world that a strategy of delay had been utilized by his attorney without his consent. The content of defendant's motion waived the attorney-client privilege. Even though defendant was represented by counsel, he voluntarily disclosed information related to representation by Mr. Davis.[4] Defendant now invites this Court to reimpose these protections, despite having waived his privilege and having failed to object or otherwise argue the same in the trial court. This is not only an improper application of privilege, but, as discussed below, it directly impacts the *Barker* analysis on defendant's speedy trial claim.

Because there was no error in the admission of Mr. Davis's testimony in the trial court, there can be no plain error.

## II. *Barker* Factors

---

[4] The majority's reliance on *State v. Williams*, 363 N.C. 689, 686 S.E.2d 493 (2009), is misplaced. *Williams* simply stands for the proposition that once a criminal defendant is appointed counsel, he or she has no right to a ruling by the court on any pro se motions. *Id.* at 700, 686 S.E.2d at 501. *Williams* does not state or imply that information contained in pro se filings has no legal consequence.

Our nation's highest court has identified four factors that "courts should assess in determining whether a particular defendant has been deprived of his right" to a speedy trial. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S. Ct. 2182, 2192, 33 L. Ed. 2d 101, 117 (1972). These factors include: (1) the length of delay, (2) the reason for delay, (3) the defendant's assertion of his right to a speedy trial, and (4) whether the defendant was prejudiced as a result. *Id.*; *see also State v. Flowers*, 347 N.C. 1, 27, 489 S.E.2d 391, 406 (1997), *cert. denied*, 522 U.S. 1135, 118 S. Ct. 1094, 140 L. Ed. 2d 150 (1998). In adopting *Barker*'s "permeating principles," this Court has recognized that no one factor is sufficient to show a deprivation of the right, and courts must "engage in a difficult and sensitive balancing process" that requires analysis of any "circumstances [that] may be relevant." *State v. Farmer*, 376 N.C. 407, 419, 852 S.E.2d 334, 343–44 (2020) (quoting *Barker,* 407 U.S. at 533, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118–19). Ultimately, this allows courts to assess "whether the government or the criminal defendant is more to blame for th[e] delay." *Brillon*, 556 U.S. at 90, 129 S. Ct. at 1290, 173 L. Ed. 2d at 240 (alteration in original) (quoting *Doggett v. United States,* 505 U.S. 647, 651, 112 S. Ct. 2686, 2691, 120 L. Ed. 2d 520, 528 (1992)).

In accordance with this approach, this Court has cautioned that the first factor—the length of delay—is not determinative of whether a defendant has been denied a speedy trial. *State v. Webster*, 337 N.C. 674, 678, 447 S.E.2d 349, 351 (1994). While "lower courts have generally found postaccusation delay 'presumptively

prejudicial' at least as it approaches one year," such a finding only instructs that further analysis into the remaining *Barker* factors is appropriate. *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1, 120 L. Ed. 2d at 528 n.1. In other words, a proper *Barker* inquiry merely proceeds to analysis of the remaining factors following a post-accusation delay of more than one year.

¶ 83        As to the second factor—the reason for delay—this Court has consistently held that a "defendant has the burden of showing that the delay was caused by the *neglect* or *willfulness* of the prosecution." *Farmer*, 376 N.C. at 415, 852 S.E.2d at 341 (quoting *State v. Spivey*, 357 N.C. 114, 119, 579 S.E.2d 251, 255 (2003)); *see also Webster*, 337 N.C. at 679, 447 S.E.2d at 351; *State v. McKoy*, 294 N.C. 134, 141, 240 S.E.2d 383, 388 (1978) ("Thus the circumstances of each particular case must determine whether a speedy trial has been afforded or denied, and the *burden is on an accused who asserts denial of a speedy trial to show that the delay was due to the neglect or wilfulness of the prosecution.*" (emphasis added)). This ensures that "[a] defendant who has himself caused the delay, or acquiesced in it, will not be allowed to convert the guarantee [of a speedy trial], designed for his protection, into a vehicle to escape justice." *State v. Johnson*, 275 N.C. 264, 269, 167 S.E.2d 274, 278 (1969).

¶ 84        "Only *after* the defendant has carried his burden of proof by offering *prima facie* evidence showing that the delay was caused by the neglect or willfulness of the prosecution must the State offer evidence fully explaining the reasons for the delay

and sufficient to rebut the *prima facie* evidence." *Spivey*, 357 N.C. at 119, 579 S.E.2d

at 255 (emphasis added). The analysis into whether a defendant was deprived of a

speedy trial is concerned with "purposeful or oppressive" delays on the part of the

State, not those that happen in good faith or in the normal course. *Id.* (quoting

*Johnson*, 275 N.C. at 273, 167 S.E.2d at 280). Indeed, neither "a defendant nor the

State can be protected from prejudice which is an incident of ordinary or reasonably

necessary delay." *Id.* (quoting *Johnson*, 275 N.C. at 273, 167 S.E.2d at 280).[5]

¶ 85    The trial court denied defendant's motion to dismiss, concluding that his right

to a speedy trial had not been violated. The trial court correctly found that the length

of delay in defendant's case was not determinative but that delay merely triggered

further examination of the *Barker* factors. The trial court went on to find specifically

that

> the State had an extensive backlog in Superior Court cases.
> From the week of July 2nd, 2012 through June 27th, 2016
> the State tried mostly cases older than [d]efendant's
> case . . . . In the instant case, law enforcement found blood
> on the driver's side airbag of the Saturn Sedan involved in
> the crash. The airbag, along with a cheek swab of
> [d]efendant's DNA was sent to the State Crime Lab for
> analysis. The State even filed a rush request in attempts to
> have the State Crime Lab conduct the DNA analysis more
> quickly. The DNA report was returned approximately

---

[5] This is contrary to the majority's suggestion that only a defendant can be prejudiced and that it was error under *Barker* for the trial court to conclude that "the State has been significantly prejudiced by the length of the delay." As our caselaw instructs, a finding of prejudice to the State is not a "misapprehen[sion] [of] the *Barker* requirement[s]" nor an "improper[ ] identifi[cation]" by a trial court as the majority contends

three years after the date of offense. This delay is all consistent with a good-faith delay allowing the State to gather evidence "which [was] reasonably necessary to prepare and present its case." *Johnson*, 27[5] N.C. at 273, 167 S.E.2d at 280.

¶ 86    Once DNA testing had been completed, prosecutors and Mr. Davis began discussing disposition of the case and scheduling. Calendaring the case was difficult due to the backlog in Rowan County. This backlog led to a request by the State to secure the assistance of the North Carolina Conference of District Attorneys. Defendant refused to accept a plea offered by the State, and subsequently, defendant was indicted on additional charges. Upon defendant's rejection of the plea, Mr. Davis chose to withdraw due to his workload.

¶ 87    Mr. Bingham was then appointed. He withdrew as counsel for defendant "within three months" of being appointed after defendant requested the change in counsel. It was defendant's actions here that the trial court determined "delay[ed] the case further."

¶ 88    After Mr. Sease, defendant's fourth attorney, was appointed in September 2017, scheduling orders were entered. The trial court found that "[d]efendant never objected or even asked for a sooner trial date[,]" and, in fact, he "consented to his trial date."

¶ 89        The trial court ultimately concluded that the second *Barker* factor weighed

against defendant, finding that the delays in defendant's case were reasonable and

that defendant failed to prove that "the State acted negligently or willfully in delaying

[d]efendant's trial."

¶ 90        Regarding the third factor, the trial court determined that defendant had failed

to file a demand for a speedy trial and that his motion to dismiss for an alleged speedy

trial violation was filed only one week before the actual trial of his case.  Thus, the

trial court determined that the third factor—assertion of the right by defendant—

"weighs heavily against [d]efendant's claim."

¶ 91        Fourth and finally, as to the prejudice factor, the trial court found that

> [d]efendant does not allege that he has suffered from
> increased anxiety or concern. In addition, there has been
> no evidence as to how his incarceration has resulted in loss
> of witnesses or his ability to prepare a defense for his
> case.[6] *In actuality, the State has been significantly*
> *prejudiced by the length of the delay.* Many of the State's
> witnesses have retired from law enforcement and civilian
> witnesses have moved and changed phone numbers. Two
> witnesses that would have significantly helped the State
> are unable to be located. . . . Even though [d]efendant has
> been incarcerated, [d]efendant has actually benefitted from

---

[6] The failure of defendant's four attorneys to secure an investigator for more than five years certainly must be a circumstance overlooked by the majority. *See Vermont v. Brillon*, 556 U.S. 81, 91, 129 S. Ct. 1283, 1291, 173 L. Ed. 2d 231, 241 (2009) (noting that it was error to "attribut[e] to the State delays caused by the failure of several assigned counsel to move [his] case forward" (cleaned up)).  Thus, it is improper to attribute to the State delays caused by the failure of defendant's counsel to investigate and locate any other potential witnesses to move defendant's case forward.  It is worth noting that the witnesses defendant intended to call at trial were family members who were readily available.

the time elapsed in regards to the State's evidence against
him at trial.

(Emphasis added.)

¶ 92      Based on the trial court's findings, defendant's motion to dismiss for a speedy

trial violation was denied.  In citing to this Court's decision in *State v. Grooms*, 353

N.C. 50, 62, 540 S.E.2d 713, 724 (2000), the trial court here correctly identified that

the "burden is on an accused" to demonstrate that the State was the reason for the

delay.  While the trial court did not directly acknowledge the lack of evidence provided

by defendant, the trial court nonetheless correctly concluded that "[t]here has been

no showing how the State acted negligently or willfully in delaying [d]efendant's trial"

based on a comprehensive analysis of the record.  The majority makes the same error

as the Court of Appeals and assumes the role of factfinder, summarily rejecting any

possibility that the delay resulted from defendant.

¶ 93      Despite clear precedent instructing that "we do not determine the right to a

speedy trial by the calendar alone," *State v. Wright*, 290 N.C. 45, 51, 224 S.E.2d 624,

628 (1976), the majority here does just that.  The majority effectively concludes that

the length of time between defendant's arrest and his motion to dismiss is all the

evidence necessary to suggest that the delay was a result of the State's willful or

negligent acts.   To be clear, defendant presented no evidence to demonstrate

willfulness or negligence by the State despite the burden of proof at that juncture

resting solely with him.  *See Spivey*, 357 N.C. at 119, 579 S.E.2d at 255.

¶ 94        In *Spivey*, this Court examined an alleged speedy trial violation where the defendant had been held in custody pretrial for approximately four-and-a-half years. The defendant argued only that "because over four and one-half years elapsed between his arrest and trial, he was denied his constitutional right to a speedy trial." 357 N.C. at 118, 579 S.E.2d at 254. This Court, in looking at the first prong of the *Barker* analysis, noted that a delay exceeding one year "does not necessarily indicate a statistical probability of prejudice; it simply marks the point at which courts deem the delay unreasonable enough to trigger the *Barker* inquiry." *Id.* at 119, 579 S.E.2d at 255 (quoting *Doggett*, 505 U.S. at 652 n.1, 112 S. Ct. at 2691 n.1, 120 L. Ed. 2d at 528 n.1). This Court clearly stated that the length of delay was enough only to "trigger examination of the other factors." *Id.* Put differently, the length of delay simply moved the inquiry to step two. *Id.* This Court ultimately concluded that despite this delay, defendant had not shown that his constitutional right had been violated. *Id.* at 123, 579 S.E.2d at 257.

¶ 95        More recently, this Court in *Farmer* found that a delay of more than five years was not a violation of the defendant's constitutional right to a speedy trial. *Farmer*, 376 N.C. at 419–20, 852 S.E.2d at 343–44. In looking at the individual factors of the *Barker* analysis, this Court correctly noted that the first factor merely operated as a "triggering mechanism" compelling further analysis of the remaining *Barker* factors. *Id.* at 414–15, 852 S.E.2d at 341. In writing for the majority, Justice Morgan pointed

out that until a notable delay occurs, "there is no necessity for inquiry into the other factors that go into the balance." *Id.* at 415, 852 S.E.2d at 341 (quoting *Barker*, 407 U.S. at 530, 92 S. Ct. at 2192, 33 L. Ed. 2d at 117).

¶ 96    The majority here, however, relies on nonbinding caselaw from the Court of Appeals to conclude that the delay here shifts "the burden of proof [to the State] 'to rebut and offer explanations for the delay.' "  Curiously, despite stating that this holding is one that this Court "ha[s] routinely held," the only citation found in the majority opinion supporting their burden shifting scheme is *State v. Wilkerson*, 257 N.C. App. 927, 810 S.E.2d 389 (2018).  This is telling in and of itself.  In relying on *Wilkerson*, the majority ignores this Court's precedent in *Spivey* and *Farmer*.  Neither *Spivey* nor *Farmer* mention the burden shifting scheme announced by the majority today.  "The only possible conclusion from the majority's silence on [*Spivey* and *Farmer*] is that these cases remain good law."  *State v. Crompton*, 380 N.C. 220, 868 S.E.2d 48, 2022-NCSC-14, ¶ 26 (Earls, J., dissenting).

¶ 97    In *Wilkerson*, the defendant was incarcerated for over three years following his arrest on charges of first-degree murder, robbery with a dangerous weapon, and conspiracy to commit robbery with a dangerous weapon. *Wilkerson*, 257 N.C. App. at 927, 930, 810 S.E.2d at 391, 392.  In noting that the length of delay surpassed the one-year mark, the Court of Appeals concluded that this factor "trigger[ed] the need for analysis of the remaining three *Barker* factors."  *Id.* at 930, 810 S.E.2d at 392.

The Court of Appeals, however, then went on to state that this length of delay can also "create[ ] a prima facie showing that the delay was caused by the negligence of the prosecutor." *Id.* (quoting *State v. Strickland*, 153 N.C. App. 581, 586, 570 S.E.2d 898, 902 (2002)). Pulling this proposition from *Strickland*, which in turn regurgitates this rule from another case from that court,[7] the Court of Appeals announced that once this prima facie case, predicated on the passage of time alone, is made, "the burden shifts to the State to rebut and offer explanations for the delay." *Wilkerson*, 257 N.C. App. at 930, 810 S.E.2d at 392–93.

¶ 98    The idea that the mere passage of time entitles a defendant to relief has been routinely rejected by this Court. Instead of heeding the instruction that an excessive pretrial incarceration period only triggers the need for analysis into the remaining *Barker* factors, this line of cases from the Court of Appeals (and most concerning, the majority here) reconfigures *Barker* such that a delay no longer merely advances the analysis to the second factor, but rather shifts the burden of proof to the State. However, this shift is illusory because, in the majority's view, the burden would always rest with the State. The majority does not explain why it shifts the burden prior to analysis of the second prong in this case, or why it is appropriate to deviate

---

[7] Both *Wilkerson* and *Strickland* appear to take this line of thinking from yet another Court of Appeals case, *State v. Chaplin*, 122 N.C. App. 659, 471 S.E.2d 653 (1996). Notably, however, the *Chaplin* panel cited no cases to support this proposition.

from clear precedent that the "defendant has the burden of showing that the delay was caused by the *neglect* or *willfulness* of the prosecution." *Farmer*, 376 N.C. at 415, 852 S.E.2d at 341 (quoting *Spivey*, 357 N.C. at 119, 579 S.E.2d at 255). Moreover, the majority does not provide any instruction as to whether the burden should return to defendant. This Court simply ignores well-established precedent to reach a desired outcome.

¶ 99          The majority further diverges from the requirements of *Barker* in its approach to the final prong of the analysis, prejudice to the defendant. The assessment of whether prejudice exists involves a look into "the interests of defendants" that the right to a speedy trial was designed to safeguard. *Barker*, 407 U.S. at 532, 92 S. Ct. at 2193, 33 L. Ed. 2d at 118. The Supreme Court of the United States "has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Id.* The final factor—an impairment of the defendant's defense—is the most serious, as it affects a defendant's ability to prepare his case for trial. *Id.*

¶ 100          Here, the majority cites *Doggett* for the proposition that it "may be impossible for the defendant to produce evidence of demonstrable prejudice" in the context of a *Barker* challenge. The majority then states that what is termed as "presumptive prejudice" may now be sufficient to tip the scales and "require dismissal of the charges" against a defendant. Notably, however, *Doggett* concerned a defendant who

was neither in custody before his trial nor informed of the charges pending against him. 505 U.S. at 648–51, 112 S. Ct. at 2689–90, 120 L. Ed. 2d at 526–28. For this reason, it was difficult for the defendant to show prejudice simply because many of the speedy trial interests were not applicable. *Id.* at 654–56, 112 S. Ct. at 2692–93, 120 L. Ed. 2d at 529. This alone makes the majority's heavy reliance on *Doggett* misplaced. Nonetheless, in looking past obvious factual discrepancies, while *Doggett* purports to suggest that prejudice may sometimes be inferred, this inference can only be made when prejudice is "neither extenuated, as by the defendant's acquiescence, nor persuasively rebutted." *Id.* at 658, 112 S. Ct. at 2694, 120 L. Ed. 2d at 532 (cleaned up). Here, the majority suggests that no justification was given by the State to rebut such "prejudice," while simultaneously barring the State from presenting such a justification through the testimony of Mr. Davis.

¶ 101    Further, defendant here makes no claim that any prejudice that occurred was "impossible" to demonstrate or "unidentifiable" to him; the majority does so on his behalf. Defendant's speedy trial motion specifically alleged that he had been "prejudiced by an inability to adequately assist his defense attorney" and by additional charges being brought by the State. While defendant failed to point to any defense he was unable to develop or witness he was unable to secure, Mr. Davis testified that the majority of the witnesses that defendant would call were family members who were readily available. In addition, Mr. Davis testified that defendant

had been informed by the State at an early stage that additional charges were possible if he did not plead guilty to lesser charges. Although these additional charges carried the possibility for increased punishment, the underlying allegations against defendant arose from the same set of facts and his criminal record. As such, the reason the trial court found that defendant did not suffer prejudice was not because such was impossible to demonstrate but rather because none had occurred.

¶ 102        Even so, a mere "*possibility* of prejudice is not sufficient to support [a defendant's] position that their speedy trial rights were violated." *United States v. Loud Hawk*, 474 U.S. 302, 315, 106 S. Ct. 648, 656, 88 L. Ed. 2d 640, 654 (1986) (emphasis added). As this Court has expressly held, "a demonstration of *actual* prejudice experienced by defendant" is required to prove defendant suffered prejudice stemming from the delay of his trial. *Farmer*, 376 N.C. at 419, 852 S.E.2d at 343 (emphasis added).

¶ 103        Defendant has failed to carry his burden under *Barker*. Nonetheless, contrary to the overwhelming weight of authority from this Court and the Supreme Court of the United States, the majority effectively holds that the mere passage of time entitles defendant to relief on a motion to dismiss for a purported speedy trial violation. Moreover, the majority eliminates the requirement under *Barker* that defendant demonstrate actual prejudice resulting from the delay.

¶ 104    For the reasons stated herein, I would uphold the decision of the trial court and reverse the decision of the Court of Appeals.

Chief Justice NEWBY and Justice BARRINGER join in this dissenting opinion.